[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff is the owner of the subject property, a 133 acre tract which he purchased in 1973, and, as such, is aggrieved by a decision of the Defendant Commission granting him, on June 6, 1991, a special permit, subject, however, to seventy eight regulatory conditions. The plaintiff contends that forty three of the seventy eight conditions are improper.
The subject land, located in a residential zone, constitutes a legal non-conforming use from a 77.6 acre portion of which plaintiff has continuously excavated sand and gravel since his purchase thereof.
On November 20, 1975, the Monroe PZC enacted Article XXI of the Town of Monroe Zoning Regulations ("Zoning Regulations"). This article states, inter alia, that all excavations must be conducted pursuant to a special permit issued by the PZC. (Id., p. 11781). At some unspecified date, the PZC, pursuant to 117-2114A of the Zoning Regulations (part of Article XXI), issued a cease and desist order to the plaintiff, which required CT Page 10232 the plaintiff to discontinue his sand and gravel operation until he applied for and secured a special excavation permit. The plaintiff claimed that he has a protected nonconforming use, and brought an action entitled Ronald Renz v. Monroe Zoning Board of Appeals, Superior Court, Judicial District of Fairfield at Bridgeport, Docket No. 114863 (1982). ("Renz I"). The litigation culminated in a stipulated judgment, which was entered on October 29, 1982. The stipulated judgment required the plaintiff to apply for a special permit prior to May 1, 1983. The plaintiff alleges that he submitted a proposed site development plan and the PZC failed to act upon it. The defendant alleges that the plaintiff failed to submit a formal application for a special permit prior to May 1, 1983. Meanwhile, the plaintiff continued to excavate sand and gravel on his property. Id.
In early 1988, the plaintiff installed rock crushing equipment on his property. Thereafter, the plaintiff, in conjunction with his gravel excavation activities, began blasting explosives at a rate of approximately once a month. The plaintiff alleges that on March 27, 1990, the Monroe zoning enforcement officer investigated the plaintiff's activities. On April 12, 1990, the plaintiff was issued a cease and desist order directing him to curtail his rock crushing activities because he lacked the requisite permit.
On May 18, 1990, the plaintiff appealed the cease and desist order to the Monroe Zoning Board of Appeals ("ZBA"). On July 5, 1990, the ZBA upheld the order and the plaintiff appealed. On August 27, 1990, the court (Thompson, J.) issued a temporary restraining order, preventing the defendant from taking any action to stop the plaintiff's nonconforming use, pending the resolution of his appeal. See Ronald Renz v. Zoning Board of Appeals, D.N. 27-34-25, ("Renz II"). As part of the Renz II proceeding, the parties entered into a stipulation which required the plaintiff to apply for a special excavation permit pursuant to the Monroe Zoning Regulations.
On October 31, 1990, the plaintiff applied to the PZC for a special permit. After notice was published in the Bridgeport Post, a public hearing was held on December 13, 1990, at which numerous Monroe residents expressed their concerns about noise, dust, truck traffic, blasting damage to homes and wells, operation on holidays and at odd hours, and other environmental concerns. Then, on June 6, 1991, the PZC issued a special CT Page 10233 permit to the plaintiff. The special permit contained seventy-eight conditions regulating, inter alia; the days and times that the plaintiff could operate his business; the routes that the plaintiff's trucks could use for ingress and egress; the conditions and hours under which the plaintiff would be allowed to conduct blasting activities; and the standards and conditions for restoration of the plaintiff's property.
In his complaint, the plaintiff alleges that the conditions imposed by the defendant are arbitrary, illegal and in abuse of its discretion because:
 (A) conditions 4-6, 15 and 20-23 are unreasonable limitations upon a valid nonconforming use;
 (B) conditions 2, 4-6, 8, 10-16, 18-24, 26, 28-35, 44-51, 53-57 and 63 are beyond the scope of the terms established in the Renz I stipulated judgment; and
 (C) conditions 7-11, 15-16, 19, 22-24, 26-35, 44-48, 50 and 55 are not authorized by Article XXI of the Monroe Zoning Regulations.
On appeal, the plaintiffs seeks a modification of the defendant's decision and asks the court to either delete from the permit all conditions which asks illegal and inconsistent with the 1982 stipulated judgment (Renz I) and the Monroe Zoning Regulations, or revise the permit so that it is consistent with the 1982 stipulated judgment and the Zoning Regulations.
JURISDICTION
In order the take advantage of a statutory right to appeal from a decision of an administrative agency, there must be strict compliance with the statutory provisions which create that right. Simko v. Zoning Board of Appeals, 206 Conn. 374,377, 538 A.2d 202 (1988). These provisions are mandatory and jurisdictional; failure to comply subjects the appeal to dismissal. Id. Appeals from zoning commissions are taken pursuant to General Statutes 8-8.
Timeliness and Service
CT Page 10234 A party commencing an appeal must do so by commencing service of process within fifteen days from the date that notice of the decision was published. General Statutes 8-8(b). The appeal shall be returned to the court in the same manner and within the same periods of time as prescribed for civil actions brought to that court. Id. Notice of such appeal shall be given by leaving a true and attested copy of the process with or at the usual place of abode of the chairman or clerk of the Board, and by leaving a true and attested copy with the clerk of the municipality. General Statutes 8-8(e). Publication of the notice of decision, together with a certified letter to the applicant, must be completed within fifteen days following the decision. General Statutes 8-7d.
A copy of the final decision was mailed to the plaintiff on June 12, 1991. The decision was published in the Bridgeport Post on June 13, 1991.
On June 20, 1991, the plaintiff commenced this action by making service upon Dan Tuba, the clerk of the Monroe Planning 
Zoning Commission, and Kay Inderdohnen, town clerk for the Town of Monroe. The appeal was commenced in a timely fashion.
Aggrievement is a jurisdictional question and a prerequisite to maintaining an appeal. Winchester Woods Associates v. Planning and Zoning Commission, 219 Conn. 303,307, 592 A.2d 953 (1991). Section 8-8(b) provides in pertinent part that "any person aggrieved by any decision of a board may take an appeal to the superior court for the judicial district in which the municipality is located. General Statutes 8-8(b). "To be an aggrieved person, one must be affected directly or in relation to a specific person" and legal interest in the subject matter of the decision, . . . and the appellant must be specifically and injuriously affected as to property or other legal rights." (Citation omitted.) Winchester Woods, supra, 307. An owner of the subject property is aggrieved and entitled to bring an appeal. Id., 308.
Plaintiff is aggrieved as he is the owner of the subject property and his valid prior-existing nonconforming use is affected by the defendant's decision to attach conditions to his special excavation permit which affect his sand and gravel operation.
SCOPE OF REVIEW CT Page 10235
A trial court may grant relief on appeal from a decision of an administrative authority only where the authority has acted illegally, or arbitrary, or has abused its discretion. Caserta v. Zoning Board of Appeals, 28 Conn. App. 256, 258, ___ A.2d ___ (1992). The burden of proof is demonstrate that the zoning authority acted improperly is upon the plaintiff. Pleasant View Farms Development, Inc. v. Zoning Board of Appeals, 218 Conn. 265,269-70, 588 A.2d 1372 (1991).
When ruling upon an application for a special permit, a planning and zoning board acts in an administrative capacity. Double I Limited Partnership v. Planning Zoning Commission,218 Conn. 65, 72 588 A.2d 624 (1991). Generally, it is the function of a zoning board or commission to decide within prescribed limits and consistent with the exercise of its legal discretion, whether a particular section of the zoning regulations applies to a given situation and the manner in which it does apply. Id. In applying the law to the facts of the case, the board is endowed with a liberal discretion, and its decision will not be disturbed unless it is found to be unreasonable, arbitrary or illegal. (Citations omitted.) Spero v. Zoning Board of Appeals, 217 Conn. 435, 440, 586 A.2d 582
(1991).
On Appeal, the trial court reviews the record before the commission to determine whether it has acted fairly or with proper motives upon valid reasons. Id. In so doing, the court may not substitute its judgment for that of the commission. Friedman v. Planning Zoning Commission, 222 Conn. 262, 268
___ A.2d ___ (1992). If the court concludes that any one of several reasons submitted by the commission for its action is reasonably supported by the record, then the commission's action must stand. Id.
 I.
The Scope of the Stipulated Judgment (Renz I)
"Although a stipulated judgment is in the nature of a contract, it is as conclusive as if it had been rendered as an adjudication on the merits of contested facts." Foley v. Southport Manor Convalescent Center, Inc., 11 Conn. App. 530,536-37, 528 A.2d 841; cert. denied, 205 Conn. 805. 531 A.2d 936
(1989). "The terms of a [stipulated] judgment may not be CT Page 10236 enlarged or lessened by the court." Lee v. Tufvesen, 6 Conn. App. 301,303, 505 A.2d 18 cert. denied, 199 Conn. 806,508 A.2d 31 (1986).
In contesting the conditions attached to his special excavation permit, the plaintiff makes a general argument concerning the scope of the Renz I stipulated judgment. The plaintiff argues that in structuring the stipulated judgment, he did not concede that every provision of Article XXI of the Zoning Regulations could be applied to his nonconforming use. In response, the defendant argues that according to the express language of the stipulated judgment, the plaintiff agreed to be bound by all the provisions contained in Article XXI.
Paragraph 4 of the stipulated judgment provides that:
 The application will be filed and processed in accordance with the applicable regulations of the Monroe Planning Zoning Commission for Excavation Permit applications.
Based on the language of paragraph 4, plaintiff agreed to file and process his application in accordance with all of the regulations that apply to excavation permit applications (117-2100 through 117-2114 of Article XXI of the Zoning Regulations). Thus, the express terms of paragraph 4 do not limit the PZC's power to attach conditions which are authorized by Article XXI to the plaintiff's permit.
However, paragraph 5 of the stipulated judgment contains the following provisions:
 5. The Excavation Special Permit applied for will be acceptable to Ronald R. Renz if issued containing the following provisions:
a. An A-2 survey will be prepared. . . .
 b. Renz may simultaneously work on one or more of the parcels at the same time. . . .
 c. On the anniversary date . . . Renz shall submit a report from a registered land surveyor. . . .
CT Page 10237 d. Except For the initial public hearing on the granting of the Special Exception Permit, no annual public hearings shall be required for renewal and extension of the permit.
 e. When an area is completed it shall be restored. . . .
 f. Renz shall estimate for the Commission the amount of material to be excavated or removed from the site. . . .
 g. The permit fee to be charged by the Town . . . shall be $50.00 per acre. . . .
 h. All other regulations not in conflict with the above will be complied with by the applicant.
Based on the language of paragraph 5.h., the parties agreed that the plaintiff would comply with "all other regulations," provided those regulations do not conflict with the express terms of paragraph 5 of the stipulated judgment. Thus, paragraph 5 places some limitations on the defendant's ability to attach conditions to the plaintiff's special excavation permit. (i.e., because the stipulated judgment has the effect of an adjudication on the merits, if a condition conflicts with the express terms of the stipulated judgment, the terms of the stipulated judgment must prevail.)
 II
Interpretation of the Zoning Regulations
The plaintiff argues that 117-2114.A. of the Monroe Zoning Regulations, which governs the applicability of Article XXI to existing excavation operations, requires the plaintiff to meet only those provisions of Article XXI which apply to grading, drainage, slopes and restoration in order to obtain a special excavation permit. The plaintiff also argues, based on the language of 117-2114.A., that excavation operations which predate the adoption of Article XXI were intentionally exempted from all of the other regulations contained in Article XXI, which in plaintiff's view, apply only to "proposed" excavations.
CT Page 10238 Section 117-2111.A. of the Monroe Zoning Regulations provides that:
 Any existing excavation operation which was commenced prior to any regulation relating thereto and is presently being conducted without a permit may be continued, provided that said continued operation is carried on in accordance with these regulations relating to grading, drainage, slopes and restoration provisions, and he subject to issuance of a permit under the requirements of this Article (Emphasis added.)
"It is a standard rule of construction that `whenever feasible, the language of an ordinance will be construed so that no clause is held superfluous, void or insignificant.'" (Citation omitted.) Planning Zoning Commission v. Gilbert, 208 Conn. 696,705, 546 A.2d 823 (1988).
Based on the plain language of 117-2114.A., in addition to the regulations which relate to grading, drainage, slopes and restoration, the plaintiff is subject to the following sections of Article XXI, all of which provide conditions for the issuance of a special permit: 117-2102, which requires the applicant to obtain inland wetland approval; 117-2103, 117-2104 and 117-2105, which require the applicant to submit maps and plans; 117-2105, which requires a statement from the Tax Collector of Monroe and an engineering report; 117-2107, which sets forth the fee for an excavation permit; 117-2108 and 117-2109, which set forth numerous conditions and requirements for approval of the permit; 117-2110, which sets forth the permittee's responsibilities with respect to the Town's roadways; 117-2111, which requires the applicant to furnish performance bonds; 117-2112, which states that the Zoning Enforcement Officer is authorized to enforce the provisions of any special permit; and 117-2113, which provides the condition for renewal and revocation of a permit.
 III
The Zoning Commission's Power to Regulate a Prior Existing Nonconforming Use and Power to Attach Conditions to a Special Permit
CT Page 10239 When zoning regulations are adopted, they apply to all property in the zone, and to both conforming and nonconforming uses. Russo v. East Hartford, 179 Conn. 250, 257, 425 A.2d 1282
(1979). In the present case, Article XXI of the Monroe Zoning Regulations, which regulates special excavation permits, was adopted in 1975. Section 117-2112.A. provides in pertinent part that:
 Any existing excavation operation which was commenced prior to any regulation relating thereto and is presently being conducted without a permit may be continued, provided that said continued operation is carried on in accordance with these regulations. . . .
"Both conforming and nonconforming uses become permitted regulated uses with the enactment of the statutes and ordinances, [provided that the regulations are a valid exercise of the town's police powers]." Russo, supra, 257. "The fact that the [plaintiff's] use may have been nonconforming . . . prior to the promulgation of these regulations, is not decisive because the regulations were applicable to both conforming and nonconforming uses of the land." Id., citing Teuscher v. Zoning Board of Appeals, 154 Conn. 650, 657, 228 A.2d 518 (1967).
The Zoning commission's power to regulate nonconforming uses is not unchecked. General Statutes 8-2 provides in pertinent part that "[zoning] regulations shall not prohibit the continuance of any nonconforming use . . . existing at the time of the adoption of such regulations." Thus, zoning amendments cannot infringe upon valid nonconforming uses. D J Quarry Products, Inc. v. Planning Zoning Commission, 217 Conn. 447,453, ___ A.2d ___ (1991). "[A]ny regulation . . . must have a reasonable relation to the public health, safety and welfare and must operate in a manner which is not arbitrary, destructive or confiscatory." (citations omitted.) Helbig v. Zoning Commission, 185 Conn. 294, 304, 440 A.2d 940 (1981). "Courts can interfere only when the measures taken do not serve the public health, safety or welfare, or are arbitrary and unreasonable." Teuscher, supra, 659.
A special permit allows a property owner to use his property in a manner expressly permitted by the local zoning regulations. WATR, Inc. Zoning Board of Appeals, 158 Conn. 196,200, 257 A.2d 818 (1969). The proposed use must satisfy CT Page 10240 the standards set forth in the regulations and any conditions necessary to protect the public health, safety, convenience and property values. Id.; Housatonic Terminal Corporation v. Planning Zoning Board, 168 Conn. 304, 307, 362 A.2d 1375
(1975). However, the zoning commission may not impose conditions on the special permit that are not authorized by the zoning regulations. Beckish v. Planning Zoning Commission,162 Conn. 11, 14, 291 A.2d 208 (1971); Lurie v. Planning 
Zoning Commission, 160 Conn. 295, 319, 278 A.2d 799 (1971); Parish of St. Andrew's Church v. Planning Zoning Commission,155 Conn. 350, 354, 232 A.2d 916 (1967). "[T]he conditions permitting the use of the property as a special exception must be found in the zoning regulations themselves; that the commission must have the authority in granting a special exception to subject the grant only to those conditions which are found in the regulations; and that none of the conditions imposed by the commission altered the requirement prescribed in the zoning regulations. . . ." (Citation omitted.) Beckish, supra,14-15. "[I]f a condition is imposed by a commission without being warranted by the regulations, it is void." Id., 15; Parish of St. Andrew's Church, supra, 353.
 IV
Analysis of the Contested Conditions
 2. The permit is given for the overall site as depicted on the plans. No expansion in excavation is authorized beyond those areas depicted. A new permit application shall be filed for any areas not depicted. Nothing herein shall limit the application of then current laws and regulations to such application including any claims of illegal expansion of a nonconforming use.
The plaintiff argues that condition 2 is an unreasonable limitation on his valid nonconforming use.
Paragraph 5.d. of the Renz I stipulated judgment provides that "[e]xcept for the initial public hearing on the granting of the [permit], no annual public hearings shall be required for renewal and extension of the permit." Paragraph 2 of the stipulated judgment provides that "[t]he application shall be for one permit to be issued for the entire tract applied for." CT Page 10241
Paragraphs 2 and 5.d. both refer to the plaintiff's special excavation permit, which was issued on June 6, 1991. Condition 2 notes that this permit covers only "the overall site as depicted on the plans." The plans submitted in conjunction with the plaintiff's application show that the plaintiff applied for a special permit to excavate on 77.6 acres of his 133 acre tract. Thus, no new public hearing will be required for renewal or extension of the plaintiff's existing special excavation permit. However, if the plaintiff seeks to excavate on a section of his land which is not within the 77.6 acres covered by the June 6, 1991 special permit the plaintiff will have to submit a new application which will be subject to a public hearing and the zoning regulations in existence at that time.
Because condition 2 applies to that portion of the plaintiff's land which is not used for excavation purposes pursuant to the June 6, 1991 special permit, this condition does not constitute an unreasonable limitation on the plaintiff's nonconforming use. Accordingly condition 2 is valid.
 4. Where a condition standard, specification, requirement of other procedure related to excavation is not specifically addressed by the permit, the provisions of Article XXI of the Regulations shall govern.
The plaintiff argues that condition 4 is beyond the scope of the terms established in the Renz I stipulated judgment.
In paragraph 4 of the stipulated judgment the parties agreed that "[t]he application will be filed and processed in accordance with the applicable regulations of the Monroe Planning Zoning Commission for Excavation Permit applications." Paragraph 5.h. states that "[a]ll other regulations not in conflict with the above will be complied with by the applicant."
Based on the language of paragraphs 4 and 5.h. of the stipulated judgment, the plaintiff is bound by the provisions of the Monroe Zoning Regulations which are consistent with the terms of the stipulated judgment, regardless of whether they are attached as conditions to the plaintiff's special permit. Accordingly condition 4 is valid.
CT Page 10242 5. Based upon the provisions of Sections 117-2108A and 2109K of the Regulations, the site shall be limited to the export of a maximum of thirty-two (32) vehicle loads per day.
The plaintiff argues that condition 5 constitutes an illegal restriction of his nonconforming use because it purports to limit the amount of business that the plaintiff may conduct on the site. The plaintiff also argues that this restriction is not authorized by either the Monroe Zoning Regulations or the Renz I stipulated judgment.
Section 117-2108.A of the Zoning Regulations provides in pertinent part that "[t]he Commission . . . shall be guided by and take into consideration the public health, safety and general welfare and . . . the impact on vehicular traffic in the area. . . ." Section 117-2109.K provides that "[t]ruck access and egress . . . shall be so arranged and truck loads shall be so trimmed as to minimize danger to traffic . . . and nuisance to surrounding properties." Thus, the regulations provide the PZC with the authority to regulate the truck traffic generated by the plaintiff's business.
Condition 5 is a valid condition, as it is authorized by the zoning regulations.
 6. Based upon the provisions of Sections 117-2103G, 2108A, and 2109R of the Regulations, truck access shall be limited to the routing recommended in Section 4.5 of the DeLeuw, Cather Company truck route study of May, 1991; more specifically:
 Access to Route 111, Route 110 and Route 34 will be as follows:
 1. Turkey Roose Road westerly from the Renz operation to Fan Hill Road.
 2. Cross Fan Hill Road and travel southerly on Elm Street to Cross Hill Road.
 3. Southbound traffic will continue on Elm Street to Route 111. CT Page 10243
 4. Northbound traffic will take Cross Hill Road to Route 111.
 Access to Route 25 and Route 59 will be as follows:
 1. Turkey Roose Road westerly from the Renz operation to Fan Hill Road.
 2. Fan Hill Road northerly to Jockey Hollow Road.
 3. Westerly on Jockey Hollow Road to Pepper Street.
 4. Southerly on Pepper Street to Route 25. The return trips will follow the same route in the opposite direction.
Sections 117-2108.A and 117-2109.K provide the PZC with the power to regulate truck access and egress. (See the discussion of condition 5, supra). The plaintiff argues that he can make his own trucks comply with this condition, however he cannot "police his customers." Thus, the plaintiff argues that it is unreasonable to condition his continued right to operate his business upon the travel routes that his customers may use.
Condition 6 is valid, as it does not contain any language which makes the plaintiff responsible for his customers' misbehavior. While the plaintiff should make a "good faith" effort to inform the customers of these routes, the plaintiff's permit cannot be jeopardized by the behavior of recalcitrant customers.
 7. Trucks may not be loaded in excess of weight limits specified in applicable state statutes and regulations including inter alia in Title 14 of the Connecticut General Statutes and Section 14 of the administrative regulations of the Connecticut Department of Transportation and the provisions of Section 117-2109.K of the Regulations.
The plaintiff argues that the zoning regulations do not CT Page 10244 provide authority for condition 7. The plaintiff also argues that this condition potentially jeopardizes his permit based on the misbehavior of his customers (i.e., plaintiff argues that he should not be responsible if a customer misregisters a vehicle's axle weight).
Section 117-2109.K. provides in pertinent part that "[l]imitations may also be placed . . . as to the maximum axle-loading required to protect town roads." Thus, condition 7 is valid, as the zoning regulations provide the defendant with the authority to attach such a condition to the plaintiff's special excavation permit, and to impose upon the plaintiff a duty to weigh all exiting trucks. Since the plaintiff claims that he weighs all vehicles before they exit his premises and directs all overweight trucks to dump their overloads, the plaintiff should not be adversely affected by the possibility of misregistration by his customers. Condition 7 is not arbitrary or unreasonable, as the defendant bases its weight limits upon the "applicable state statutes and regulations."
 8. Weight records shall be maintained by the Permittee at his regular place of business detailing the loading of all trucks exiting the site. Such records shall be made available to the Commission or its agents at all reasonable business hours to determine truck use compliance. Such records shall include but are not necessarily limited to: (a) vehicle owner, (b) identifying registration or numbers, (c) vehicle type, (d) weight and load capacity, (e) date and time of weighing, (h) scale operator signature. Each driver shall be provided a duplicate weight record for inspection.
The plaintiff argues that condition 8 is not authorized by the zoning regulations and is beyond the scope of the terms established in the Renz I stipulated judgment.
Section 117-2109.K. provides that:
 Truckloads shall be so trimmed as to minimize danger to traffic. . . . Limitations may also be placed as to . . . the maximum axle-loading required to protect town roads. CT Page 10245
Neither 117-2109.K. nor any other section of the zoning regulations, nor any terms contained in the Renz I stipulated judgment, impose upon the plaintiff a duty to maintain weight records for all trucks loading on and exiting from the plaintiff's property. "Zoning regulations . . . should not be extended by construction beyond the fair import of their language and cannot be construed to include by implication that which is not clearly within their express terms." (Citation omitted.) Planning Zoning Commission v. Gilbert, 208 Conn. 696,705, 546 A.2d 823 (1988). Accordingly, condition 8 is invalid.
 10. If it is found that export vehicles are (a) not following assigned route, (b) not following specified schedules, (c) being overloaded, the Commission reserves the right to reduce the allowable export vehicle number after notice to permittee an opportunity to be heard (as detailed in Item #5 above) or deem the permit suspended after appropriate notice by the Zoning Enforcement Officer as provided in Section 8-12 C.G.S. until it is satisfied that compliance has been achieved.
The plaintiff argues that condition 10 potentially jeopardizes his permit based on the actions of others. In response, the defendant argues that condition 10 requires the plaintiff to ensure compliance with the regulations or face the possible revocation of his permit.
Condition 10 is reasonable with respect to the plaintiff's own export vehicles, as plaintiff has the power to control their routes, weight and departure schedule. Condition 10 is reasonable with respect to the plaintiff's customers' export vehicles, because the plaintiff can control their departure schedule (one truck every 15 minutes, as provided by condition 5) and because the plaintiff can control their weight (as plaintiff claims to weigh all vehicles that exit his premises). However, condition 10 is unreasonable with respect to customers who fail to follow the assigned routes, as the zoning regulations do not authorize or warrant penalizing the plaintiff for his customer's misconduct. At most, plaintiff should be required to inform the customer, of the proper routes and to make a good faith effort to secure their compliance. Therefore CT Page 10246 condition 10 should be modified so that the plaintiff's vehicles will be required to: (a) follow assigned routes; (b) follow the specified departure schedules; and (c) conform to the specified weight limits. Condition 10 should be further modified so that the plaintiff's customers' vehicles will be required to: (a) follow the specified departure schedules; and (b) conform to the specified weight limits; because the plaintiff has the ability to exercise control over these requirements.
 11. The general operating days and times of the site shall be limited to (all times are local):
 Monday — Friday 7:00 a.m. — 5:00 p.m. Saturday 8:00 a.m. — 1:00 p.m.
 Based upon the provisions of Sections 117-2108A and 2109M of the Regulations, no vehicles or equipment on site shall be started or operated before or after the specified hours.
The plaintiff argues that condition 11 is at odds with 117-2109M of the zoning regulations. In response, the defendant argues that they may limit the plaintiff's hours of operation in consideration of the residents' rights to "safety and comfort."
Section 117-2109 or the zoning regulations states that: "[t]he plans . . . shall become part of the special permit, and the following conditions shall be met:
 M. No operations shall be undertaken on the site except between the hours of 7:00 a.m. and 5:00 p.m., local time, Monday through Saturday."
The zoning authority's action is illegal if the regulation in question is construed beyond the fair import of its language. Double I Limited Partnership, supra, 72. Since the zoning regulations provide the PZC with the authority to regulate the plaintiff's hours of operation, condition 11 should be modified so that it conforms to the times stated in 117-2109.M.
12. In the case of blasting to be conducted CT Page 10247 on site, the days and times of blasts shall be limited to (all times are local):
Monday — Friday 2:30 p.m. — 4:30 p.m.
The plaintiff argues that condition 12 is contrary to 117-2109.M. of the zoning regulations, which provides that blasting may be conducted at any time between 9:00 a.m. and 5:00 p.m.
Section 117-2109 provides in pertinent part that "[t]he plans . . . shall become part of the special permit, and the following conditions shall he met:
 M. . . . There shall be no blasting on the site except between the hours of 9:00 a.m. and 5:00 p.m., local time, Monday through Friday. . . ."
The commission's action is illegal if the regulation in question is construed beyond the fair import of its language. Double I Limited Partnership, supra, 72. Since the zoning regulations provide the PZC with the authority to regulate the times when the plaintiff may blast rocks, condition 12 should be modified so that it conforms to the times stated in 117-2109.M.
 13. In the case of operation of any audible or vibration-producing type equipment, which exceed the standards of Sections 117-1201A and 1201B of the regulations (i.e. drills, percussion hammers, and similar, whether static or mobile), the days and times of their operation shall be limited to (all times are local):
Monday — Friday 9:00 a.m. — 5:00 p.m.
The plaintiff does not actually contest this condition, and states that "[o]n the assumption that the measurements are taken off the plaintiff's property, the plaintiff has no objection."
Section 117-1201.A. provides in pertinent part that ". . . at no point less than two hundred fifty (250) feet from any other zone boundary or . . . from any property line . . . shall the radiating sound level . . . exceed the decibel level in Column B. . . ." Based on the language of 117-1201.A., these measurements would be CT Page 10248 conducted off of the plaintiff's property. Thus, condition 13 is valid.
 14. No activity of any sort may occur on any Sunday, any legal holiday declared by the State of Connecticut or government of the United States.
The plaintiff argues that his business should be required to observe only those holidays which are recognized by the construction industry.
Section 117-1109.M. of the zoning regulations provides that "[n]o activity of any type shall be conducted on any legal holiday declared by the . . . State of Connecticut or the United States." This section also provides that "[n]o operation shall be undertaken . . . except between 7:00 a.m. and 5:00 p.m. . . . Monday through Saturday. Since condition 14 conforms with the time standards contained in 117-2109.M., it constitutes a valid condition.
 15. The Permittee shall submit to the Commission no later than July 15, 1991, and on February 1 of every year thereafter during the life of the excavation, a written schedule of operating days and hours for the ensuing one (1) year period.
The plaintiff argues that condition 15 is unwarranted and burdensome, and that neither the zoning regulations nor the Renz I stipulated judgment support this condition.
Plaintiff must comply with the time constraints contained in 117-2109.M. The defendant, by virtue of its own regulations is aware that the plaintiff cannot operate at certain times and on certain days. Neither the zoning regulations nor the stipulated judgment provide the authority for such a condition. The commission may not impose conditions that are not authorized by the zoning regulations. Beckish, supra, 14. If a condition is not warranted by the regulations, it is void. Id. Accordingly, condition 15 is void because it is not authorized by the zoning regulations.
 16. The Permittee shall submit to the Commission on the first day of every month a CT Page 10249 written schedule of blasting for the month. Should no schedule be submitted, no blasts shall occur in that month.
The plaintiff argues that no authority exists for imposing condition 16. In response, the defendants argue that this condition is needed to protect the health, safety and general welfare of the public, and that 117-2109.L. provides the authority for this condition.
Section 117-2109.M. provides in pertinent part that "[t]here shall be no blasting on the site except between the hours of 9:00 a.m. and 5:00 p.m. . . . Monday through Friday." Section 117-2109.L. provides that "[p]roper measures shall be taken to minimize the nuisance of noise and flying dust or rock and lighting, if permitted."
The zoning regulations do not provide the PZC with the authority to require a written blasting schedule or to prohibit the plaintiff from blasting based on his failure to submit a written schedule on the first day of the month. If a condition is not warranted by the regulations, it is void. Beckish, supra, 14. Condition 16 is void.
 18. Should bury holes be required for rock or organic material, a location plan for same shall be supplied to the Commission for prior approval and determination of potential negative environmental impacts.
The plaintiff argues that condition 18 is beyond the scope of the Renz I stipulated judgment and that no authority for this condition exists in Article XXI.
Section 117-2108.A. of the zoning regulations provides in pertinent part that "[t]he Commission . . . shall . . . take into consideration the . . . future usefulness of the premises. . . ." Section 117-2109.O. provides in pertinent part that "[t]ree stumps and roots . . . may be buried on the area, provided that the same are suitably covered with earth material and further provided that such burying will not vary the approved final contours."
Sections 117-2108.A. and 117-2109.O. authorize the PZC to regulate bury holes and to consider the future usefulness of the CT Page 10250 premises. Condition 18 is valid because it is authorized by the zoning regulations.
 19. No trash, garbage, waste oils, chemicals or petroleum products, or any type of wastes or other material may be deposited, stored, or buried on site with the exception of trash or garbage stored for immediate collection.
The plaintiff argues that condition 19 is not authorized by Article XXI of the Monroe Zoning Regulations.
Section 117-2109.O. provides in relevant part that "[i]f . . . debris or trash is encountered, the same shall be removed from the site and disposed of in accordance with applicable town regulations." Based on the express language of 117-2109.0., the PZC has the authority to impose condition 19 on the plaintiff's special excavation permit. Accordingly, condition 19 is valid.
 20. In accordance with the specific provision of Section 117-2109P of the Regulations, no approval, authorization or similar type of acknowledgement is granted, implied, nor should be inferred for the erection, installation, storage, maintenance, use or operation of any sorting, grading, crushing or other machinery related to or used in the treatment or processing of material.
 21. No blasting of rock material shall be permitted for the purpose of supply of any sorting, grading, crushing or other machinery related to or used in the treatment or processing of material.
 22. It is recognized by the Commission that the question of the ability to use any sorting, grading, crushing or other machinery for treatment or processing of material and the use of blasting to supply any such machinery with material on this site is a disputed issue currently pending before the Connecticut Superior Court. Without knowing the outcome of this legal question, the CT Page 10251 Commission reserves the right, in the event a final Court judgment finds for the Permittee authorizing such activity and use of such machinery, that it require the Permittee to apply to modify the terms of the permit to incorporate such activity and bring it under appropriate regulation and management.
In Ronald R. Renz v. Zoning Board of Appeals, Superior Court, Judicial District of Fairfield at Bridgeport, Docket No. 273425 (February 11, 1992), the court (Stodolink, J.) held that the plaintiff's use of rock crushing equipment constituted an illegal expansion of a prior existing nonconforming use. According the plaintiff's appeal is dismissed as to conditions 20, 21 and 22.
 23. When blasting is to occur for any reason, the Permittee and/or the blasting contractor shall offer to all structure owners within 1500 feet of the boundaries of the Permittee's property as shown on the plans a pre-blast survey to determine existing structure conditions for the purpose of arbitrating liability claims. Not more than one (1) such survey shall be required in any calendar year. 24. Insurance carrier information shall also be furnished to owners (see Item #23 above) upon request.
The plaintiff claims that these conditions are invalid because they are not authorized by either the zoning regulations or the Renz I stipulated judgment. In response, the defendants argue that they are acting pursuant to 117-2108.A. of the Zoning Regulations, which allows the commission to consider the public health, safety and welfare. The defendants also acknowledge that the hearing transcript contains numerous complaints about the detrimental impact of the plaintiff's blasting on the surrounding community.
Despite the broad mandates of 117-2108.A., requiring the plaintiff to offer all "structure owners" a pre-blast survey and "insurance carrier information" for the purpose of arbitrating liability claims is not authorized by the zoning regulations. These conditions bear no reasonable relationship to protecting the public safety and welfare. When the plaintiff blasts rocks CT Page 10252 (which by law constitutes an "inherently dangerous" activity), he is absolutely liable for any injuries to persons or property suffered by members of the surrounding community. See, e.g., Romaniello v. Dyna Distributors, Inc., 154 Conn. 605,227 A.2d 430 (1967); King v. New Haven Trap Rock Co., 146 Conn. 482,152 A.2d 503 (1959); Green v. Ensign-Bickford Co., 25 Conn. App. 479,595 A.2d 1383 (1991).
If conditions are not warranted by the zoning regulations, they are void. Beckish, supra, 15; Parish of St. Andrews Church, supra, 353. Therefore, conditions 23 and 24 are void.
 26. All blasting shall be monitored by seismographic equipment at no cost to the town. Seismographs shall be placed where directed by the Fire Marshal on the site's property lines and at such other remote locations as directed by the Fire Marshal. Technicians and equipment used shall meet the approval of the Fire Marshal. Seismic reports of each activity shall be promptly returned to the Fire Marshal for analysis and proof of compliance with accepted standards for such activity.
 27. On-site storage of explosives shall be regularly available for inspection by the Fire Marshal and all records in relation thereto be available for inspection on demand.
The plaintiff contends that these conditions are beyond the scope of the terms established in the Renz I stipulated judgment and are not authorized by the Monroe Zoning Regulations because they require action by the Monroe Fire Marshall, over whom the defendant has no jurisdiction. The plaintiff also argues that the Fire Marshall may choose not to monitor every instance of blasting. In response, the defendant contends that it is not trying to subvert or contest the Fire Marshall's power to regulate blasting. The defendant claims that these conditions are authorized by 117-2108.A. of the Zoning Regulations, which allows them to consider the public health, safety and welfare.
Any regulation must be reasonably related to public health, safety and welfare, and must operate in a manner which is not arbitrary, destructive or confiscatory. Helbig, supra, 304, CT Page 10253 Section 117-2108.A. provides the PZC with the authority to condition the plaintiff's special excavation permit in order to protect the public health, safety and welfare.
Conditions 26 and 27, which provide for monitoring of the plaintiff's blasting activities, are reasonably related to protecting public health, safety and welfare and are, therefore, authorized by 117-2108.A. These conditions are not arbitrary or unreasonable, as the plaintiff has been, and will be, required to submit to inspection and monitoring by the Fire Marshall, irrespective of these conditions. These conditions do not conflict with the terms of the stipulated judgment as it does not address monitoring by the Fire Marshall. Therefore, conditions 26 and 27 are valid.
 28. The generation of noise in any phase of the operation at no time shall exceed the standards found in Sections 117-1201A(1), (2) and (3) of the Regulations.
 29. Where a more stringent applicable regulation, ordinance, or law is imposed by local or Connecticut law than that required in Item #28 above, the more stringent shall apply.
The plaintiff argues that condition 28 is invalid because the noise level standards are not contained in Article XXI of the Zoning Regulations. The plaintiff argues that condition 29 violates General Statutes 8-2 insofar as it authorizes more extensive municipal regulation of the plaintiff's use in the future.
Paragraph 5.h. of the Renz I stipulated judgment provides that "[a]ll other regulations not in conflict with the above will be complied with by the applicant." Thus, based on this stipulation, the plaintiff is subject to all other regulations contained in the Monroe Zoning Regulations which do not conflict with the terms of the Renz I stipulated judgment and Article XXI of the Monroe Zoning Regulations. The noise level standards for industrial zones, contained in 117-1201.A., do not conflict with either. Section 117-2109.L. provides the PZC with the authority to minimize the nuisance caused by noise produced by excavation operations. The fact that the PZC chose to do so by incorporating the noise standards set forth in 117-1201.A. does CT Page 10254 not make condition 28 improper. Accordingly, condition 28 is valid.
Condition 29 is valid, as it does nothing more than ensure that the plaintiff's future actions will be based upon future regulations. This condition does not violate General Statutes8-2 as it does not in any way prohibit the continuance of an existing nonconforming use.
 30. In the case of storage and dispensing of motor fuels, oils, lubricants and other flammables, such storage and dispensing shall be approved in writing by all appropriate local and state officials. Copies of such approvals shall be provided to the Commission for each permit renewal, modification or reinstatement on a timely basis.
 31. Any above-ground fuel storage shall have appropriate leak containment measures installed per the specification of the Connecticut Department of Environmental Protection (DEP) and approval of the same forwarded to the Commission.
 32. Junk and inoperable fuel storage tanks, equipment and facilities shall be removed from the premises no later than January 1, 1992, and be properly disposed of.
The plaintiff contends that conditions 30, 31 and 32, which seek to regulate the plaintiff's storage of fuel, oil and other flammables, are not authorized by Article XXI of the Monroe Zoning Regulations. The plaintiff also argues that the defendant has no authority to control the actions of independently functioning agencies and no authority to administer and monitor the state laws which affect the plaintiff's operation.
Section 117-2108.A. of the Zoning Regulations provides in pertinent part that:
 The Commission, in considering and reviewing the application and in arriving at its decision, shall be guided by and take into CT Page 10255 consideration the public health, safety and welfare and general effect of the same on the neighborhood, the duration of operations, future usefulness of the premises . . . and such other factors as may bear upon the harmonious physical development of the Town of Monroe.
Section 117-2109.O. provides in pertinent part that:
 If . . . debris or trash is encountered, the same shall be removed from the site and disposed of in accordance with applicable town regulations.
Section 117-2113.B.(7) provides that:
 As necessary for inspection purposes, any members of the Commission or its authorized representatives shall have the right of access to all operations for which excavation permits have been issued or applied for.
Based on the language of 117-2108.A. and 117-2113.B.(7), the PZC has the authority to regulate the plaintiff's storage and dispensing of fuels, oils and other flammables. By requiring the plaintiff to obtain approval from local and state officials, and furnish copies of these approvals for inspection purposes, the defendants are neither attempting to control other agencies nor attempting to administer and monitor state laws. Rather the defendants are leaving enforcement of these laws to the proper agencies, and making renewal, modification or revocation of the permit contingent upon plaintiff's compliance with the applicable statutes and regulations. Accordingly conditions 30 and 31 are valid.
Defendant has the power to require the plaintiff to remove "junk and inoperable" fuel storage equipment pursuant to 117-2109.O., which provides the defendants with the authority to require removal of trash and debris from excavation sites. Accordingly condition 32 is valid.
 33. The Permittee shall provide bonds to the Town for purposes described in Section 117-2111 of the Regulations and shall be governed as prescribed by that section. CT Page 10256
Bonds shall be provided as follows:
 Conditions of Approval: 80% by Letter of Credit 20% by Cash Money
 Responsibilities of Permittee: 80% by Letter of Credit 20% by Cash Money
 Revocation and Suspension: 100% by Letter of Credit
 Letter of Credit shall be issued in a form approved by the Commission.
 Should any Letter of Credit expire, be cancelled, revoked or fail to be otherwise renewed, all activities on the site shall be suspended until the requisite bond is again provided in full force and effect. Cash money shall be provided by certified check to be held in escrow by the Fiscal Officer of the Town of Monroe. Said escrow may be used in emergency for remedial measures and after such action must be renewed by the Permittee.
 34. The Commission shall provide to the Permittee within ninety (90) days of this action figures for each of the required bonds. Each bond will, in turn, be provided to the Commission by the Permittee within sixty (60) days of the issue of the bond amount.
 35. Recognizing that the amount and nature of work on the site can vary during the permit's life, the Permittee shall provide such other bonds and insurances as required by local and state laws and by local and state authorities and by the Commission at such time as may be required during the period of operation until such time as the bonded activity is deemed to be acceptably complete by the Commission. CT Page 10257
The plaintiff contends that these conditions are invalid because they conflict with paragraph 5.b. of the Renz stipulated judgment, which provides in pertinent part that:
 A separate bond shall be filed for each parcel being worked the amount of which shall be determined when Renz notifies the Commissioner he is about to commence the excavation of a particular parcel. The amount of a particular bond shall be the estimated unit price for landscaping, grading and seeding that parcel and shall be in the nature of a "restoration bond."
This paragraph addresses only the bond necessary to ensure plaintiff's performance with respect to the restoration of his property, and does not cover other obligations for maintaining an excavation business.
Performance bonds are governed by 117-2111 of the Zoning Regulations, which require applicants to obtain bonds "to ensure faithful performance of the work to be undertaken pursuant to the conditions of approval (117-2109), the responsibilities of the permittee (117-2110), and revocation and suspension (117-2113)." Since conditions 33, 34, and 35 are authorized by 117-2111 and are consistent with the terms of the stipulated judgment, accordingly, they are valid.
 44. Following the initial authorization, no more than one block may be worked at any given time.
 45. Transition periods for transferring of activities between blocks not to exceed sixty (60) days shall be permitted which will allow concurrent activity in each. The purpose of such transition is to provide for movement of equipment and supplies, enabling access, securing and restoring of blocks being closed out.
 46. Blocks being formally closed shall have all grading activities cease and restoration completed no later than sixty (60) days after CT Page 10258 the initiation of activity in a newly authorized block.
The plaintiff contends that conditions 44, 45 and 46 conflict with the express terms of the Renz I stipulated judgment.
Condition 44 does not conflict with the stipulated judgment. Paragraph 5.b. of the judgment states that "Renz may simultaneously work one or more of the parcels at the same time." Based on the terms of paragraph 3 which state that:
 The area presently being excavated (containing approximately 25-30 acres) will be designated as one parcel and the remaining area to be excavated in the future shall be divided into . . . 5-acre parcels;
and based on the terms of the special excavation permit which was issued for 77.6 acres of the plaintiff's land, the "parcels" referred to in paragraphs 3 and 5.b. are those parcels contained in the 77.6 acre tract covered by the special excavation permit. Condition 44 refers to the balance of the plaintiff's land which is not covered by the special excavation permit. Since condition 44 does not conflict with the stipulated judgment, it is valid.
With respect to condition 45, the Zoning Regulations do not provide the commission with the power to establish "transition periods" for excavation activities conducted on "blocks" of land which are covered by the plaintiff's special excavation permit. With respect to condition 46 the zoning regulations do not provide the commission with the authority to require the plaintiff to complete restoration activities on "closed" blocks within sixty days of commencing excavation on "new" blocks. The commission may not impose conditions that are not authorized by the zoning regulations. Beckish, supra, 14. If a condition is not warranted by the regulations, it is void. Id.
As the plaintiff argues in his brief, conditions 45 and 46 conflict with the terms of the 1982 stipulated judgment. Paragraph 5.b., which allows the plaintiff to simultaneously work on one or more "blocks," does not contain time restrictions for the transfer of activities between parcels. The terms of a stipulated judgment may not be enlarged or lessened in this CT Page 10259 manner. See Lee v. Tufvesen, supra, 303.
Accordingly conditions 45 and 46 are invalid.
 47. An overall plan of conservation and restoration shall be developed for the entire property by a neutral third party agreed upon by the Commission and Permittee (i.e., USDA Soil Conservation Service). The plan shall address the following:
 a. Remedial work (specifically including replacement, supplementation of vegetative cover, supplementation of topsoil to assure future growth, and E S measures to assure stabilization) in previously disturbed areas where restorative attempts have been inadequate or ineffective; remedial work shall be addressed in those areas detailed as "Area Previously Excavated" on Pages 6, 7 and 10 of the plans and south of the southerly tree line on Page 9 of the plans;
 b. Measures to be implemented as work progresses and is completed in Block Nos. 4, 5, 9, 10, 21 and 22;
 c. Measures to be implemented as work progresses and is completed in future authorized blocks.
 The plan, when completed, shall be binding and work specified shall be assured under a Letter of Credit bond for restoration. Said bond to be posted upon initiation of restorative measures in an amount to be determined by the Commission prior to state of such work.
 48. Any costs associated with preparation of the conservation and restoration plan shall be borne by the Permittee.
The plaintiff argues that conditions 47 and 48 exceed the scope of the terms established in the Renz I stipulated judgment and 117-2109.Q.(2) of the Monroe Zoning Regulations. In CT Page 10260 response, the defendants contend that condition 47 is an attempt to "balance" the parties' competing interests by providing that the restoration plan may be developed by a neutral third party.
In paragraph 5 of the Renz I stipulated judgment, the parties agreed to the following terms:
 b. . . . A separate bond shall be filed for each parcel being worked. . . . The amount of a particular bond shall be the estimated unit price for landscaping, grading and seeding that parcel and shall be in the nature of "restoration bond."
 c. . . . Renz shall submit a report from a registered land surveyor indicating the area within which excavation is being carried on and representing that all excavation completed conforms to the finished contours as approved.
 e. When an area is completed it shall be restored. . . .
Section 117-2109.Q. of the Monroe Zoning Regulations provides in pertinent part that:
 Q. When the approved excavation and removal operations . . . are completed, . . . the excavation area shall be graded and seeded as required herein. . . .
 (2) Within . . . (60) days following the expiration or revocation of the permit or the completion of the changes in contour, the entire area disturbed from its natural state . . . shall be . . . graded . . . and seeded. . . .
The Renz I stipulated judgment and 117-2109.Q. require the plaintiff to perform restoration work and obtain a restoration bond. While neither the stipulated judgment nor 117-2109.Q. require the plaintiff to develop a restoration plan or name a neutral third party to do so, the authority to attach such a condition to the plaintiff's special excavation permit is found in 117-2103 of the Zoning Regulations, which provides in pertinent part that: CT Page 10261
 The application shall be accompanied by . . . a plan of operation prepared by a registered land surveyor and professional engineer . . . which plan of operation shall include . . .
 H. Details of final grading and planting of the site to prevent erosion of the site at the conclusion of operations or at such earlier times as may be required by the Planning and Zoning Commission.
Therefore, conditions 47 and 48 are valid.
 50. Slope limits of completed work area shall not exceed the following:
a. Stable material — 2:1
b. Unstable material — 3:1
c. Stable Rock — 1:1
 More stringent slope limits may be imposed by the Commission as field conditions dictate due to unusual soil or topographic conditions not previously anticipated.
The plaintiff contests the inclusion of condition 50, which pertains to slope restoration on the excavated property, on the grounds that it is inconsistent with the terms of the Renz I stipulated judgment and the Monroe Zoning Regulations.
Paragraph 5.c of the Renz I stipulated judgment provides in relevant part that:
 . . . Renz shall submit a report from a registered land surveyor . . . representing that all excavation completed conforms to the finished contours as approved.
Section 117-2109 provides that:
A. The change in contour shall conform to the CT Page 10262 plans approved by the Commission.
 B. No artificial slope greater than thirty degrees (30 degrees) to the horizontal shall be created.
 C. No change in contour shall be made within twenty-five (25) feet of any property line.
 D. No artificial slope greater than fifteen degrees (15 degrees) to the horizontal shall be created within fifty (50) feet of any property line.
 E. No artificial slope greater than fifteen degrees (15 degrees) to the horizontal shall be created within fifty (50) feet of any street line.
Section 117-2109.A. through E. provides the defendants with the authority to establish slope gradients. Paragraph 5.c. of the stipulated judgment does not limit the defendants' power to do so, as it only requires all excavations to conform "to the finished contours as approved." Accordingly condition 50 (and the slope gradients established therein) is valid to the extent that they conform to the slope gradients stated in 117-2109.A. through E. and the slope gradients for the completed excavation, as stated in the plaintiff's approved plans (submitted along with his application for the special excavation permit).
 51. All finished contours shall be a minimum six (6) feet above any ledge or the natural water table.
 53. Where the depth to original ledge or to the natural water table is less than six (6) feet, the existing soil conditions shall be maintained and overburden not removed.
The plaintiff contests the inclusion of conditions 51 and 53, which pertain to the restoration of the excavated property, on the grounds that they are inconsistent with the Monroe Zoning Regulations and the terms of the Renz I stipulated judgment.
Section 117-2109.Q.(3) provides in pertinent part that: CT Page 10263
 All finished contours shall be a minimum of six (6) feet above any ledge or the natural water table, except in such cases where the original land condition showed ledge or water table at a depth of less than six (6) feet, in which case the existing conditions shall be maintained as a minimum. . . .
Thus, conditions 51 and 53 are facially valid, as they restate the restoration requirements contained in 117-2109.Q.(3).
However, in paragraph 5.e. of the stipulated judgment the parties agreed that "ledge will not be covered but loose ledge material must be removed." Based on the terms of the stipulated judgment, the PZC agreed that the plaintiff would not be required to cover ledge areas, and thus agreed not to attach conditions containing such a requirement to the plaintiff's special permit. A stipulated judgment is equivalent to an adjudication on the merits. Foley v. Southport Manor Convalescent Center, supra, 536-37. Terms of a stipulated judgment may not be enlarged or lessened by the court. Lee v. Tufvesen, supra, 303. The issue of whether the parties could stipulate to exclude ledge areas from the scope of the zoning regulations is not before this court.
Based on the language of the zoning regulations and the terms of the stipulated judgment, conditions 51 and 53 are valid insofar as they pertain to the natural water table. However, these conditions are invalid to the extent that they attempt to modify the prior stipulated judgment.
 54. For the purpose of assurance of compliance with Items #51 and #53 above, the Permittee shall submit depth to ledge profiles and water table profiles before initiating new excavation.
The plaintiff contends that condition 54 is contrary to the terms contained in paragraph 5.a. of the 1982 stipulated judgment.
Section 117-2109.S provides in pertinent part that:
The commission may at any time during the CT Page 10264 permit year require an engineering progress report from the permittee. . . .
Thus 117-2109.S. provides the PZC with the authority to attach such a condition to the plaintiff's special excavation permit. None of the terms contained in the stipulated judgment address depth to ledge profiles and water table profiles (paragraph 5.a. refers to an "A-2 survey" which shows the proposed final contours of the property, and which must be submitted as part of the application for the special excavation permit).
Accordingly condition 54 is valid.
 55. Topsoil shall be stockpiled and not removed from the site. Topsoil shall be retained for restoration purposes. Excess topsoil may only be removed from the site after area closure and only to Commission after completion of restoration.
The plaintiff argues that condition 55 is inconsistent with the terms of the Renz I stipulated judgment and the Monroe Zoning Regulations.
Paragraph 5.e. of the stipulated judgment provides in pertinent part that:
 Other disturbed areas shall be restored or covered by a "top six-inch of native material located on that particular site."
Section 117-2109.Q.(1) of the Zoning Regulations provides that:
 The top layer of arable soil for a depth of six (6) inches shall be set aside on the premises and shall be respread in accordance with the approved contour lines. . . .
Paragraph 5.e. of the stipulated judgment requires the plaintiff to restore excavated areas with six inches of "native" topsoil (i.e., the topsoil he removes from a given area prior to excavating the underlying sand and gravel). Section 117-2109.Q.(1) also requires the plaintiff to set aside "the top layer of arable soil" (i.e., the topsoil). Condition 55 is valid because it conforms with the zoning regulations and the CT Page 10265 stipulated judgment.
 56. The Permittee shall provide annually, on or before February 1, or at such other time as the Commission may require (in accordance with Section 117-2109S of the Regulations) a progress report prepared by a licensed Connecticut civil engineer, including supplementary reports of a licensed Connecticut land surveyor (where needed). Such report shall address, but not be restricted to:
— general site conditions
— Compliance with permit and regulations
 — estimate of material removed to date and to be removed
— E S management
— maintenance of depth to ledge
— maintenance of depth to water table
 — impacts on water table on site and at property lines
— adverse impacts realized through operations
 — unusual conditions and situations created through operations and evaluation of same
 — recommendations for continued operations and remedial measures
 — remedial measures taken and resultant effect
 — progress prints of in-progress and finished contours at a scale consistent with the approved plans.
The plaintiff contends that condition 56 conflicts with CT Page 10266 paragraph 5.c. of the Renz I stipulated judgment. Paragraph 5.c. provides that:
 On the anniversary date of the issuance of the Special Permit, Renz shall submit a report from a registered land surveyor indicating the area within which excavation is being carried on and representing that all excavation completed conforms to the finished contours as approved.
Section 117-2109.S. of the Monroe Zoning Regulations provides that:
 The Commission may at any time during the permit year require an engineering progress report from the permittee . . . If such a report is not received . . . within thirty (30) days . . . the Commission may engage a professional engineer or land surveyor to determine compliance. . . .
Section 117-2109.S. provides the PZC with authority to attach condition 56 to the plaintiff's special permit.
The Renz I stipulated judgment does not prevent the defendant from obtaining additional reports from the plaintiff, nor does it limit the details that would be required in these reports. Therefore, condition 56 is valid.
 57. Upon restoration and closure of any block, the Permittee shall provide a completion report prepared by a licensed Connecticut civil engineer, including supplementary reports of a licensed Connecticut land surveyor (where needed).
Paragraph 5.e. of the Renz I stipulated judgment requires the plaintiff to submit a report on the anniversary date of the issuance of the special permit which indicated the areas being excavated and whether the completed areas conforms to the approved "finished contours." Paragraph 5.e. does not restrict the defendants from exercising their authority to require additional reports pursuant to 117-2109.S. of the Monroe Zoning Regulation. Accordingly condition 57 is valid. CT Page 10267
 63. Where any provision of the permit or the regulations relating to the operation is unclear or in question, the Commission shall interpret and/or determine the applicable requirement.
The plaintiff argues that condition 63 conflicts with the terms of the Renz I stipulated judgment.
Generally, it is the function of a zoning commission to decide within prescribed limits and consistent with the exercise of its legal discretion, whether a particular section of the zoning regulations applies to a given situation and the manner in which it does apply. Double I Limited Partnership, supra, 72. In applying the law to the facts of the case, the board is endowed with a liberal discretion, and its decision will not be disturbed unless it is found to be unreasonable, arbitrary or illegal. Spero v. ZBA, supra 440. The stipulated judgment does not address the commission's power to interpret its regulations. Therefore, condition 63 is valid because the defendant has the discretion to interpret its regulations and determine whether a particular regulation applies to a given situation.
McKEEVER, JUDGE.