E & F Realty Company, Trustee *v.*
Commissioner of Transportation

(two cases)

House, C. J., Loiselle, Bogdanski, Longo and Speziale, Js.

Argued May 4—decision released July 5, 1977

*Arnold K. Shimelman,* assistant attorney general, with whom, on the brief, was *Carl R. Ajello,* attorney general, for the appellant (defendant).

*Gregory C. Willis,* with whom were *John P. Chiota* and *David Bodine* for the appellee (plaintiff).

HOUSE, C. J. These two cases arise from the defendant's condemnation for highway purposes of two separate portions of a parcel of land owned by the plaintiff. By agreement of the parties, the cases were consolidated for trial and by stipulation, pursuant to the provisions of § 606 of the Practice Book, as amended, appeals from the judgments in the two cases were combined for appeal to this court. Upon the taking of each parcel, the defendant filed a statement of compensation and as to each the plaintiff appealed to the Superior Court from the assessment of damages, claiming that the compensation was inadequate. The cases were referred to a state referee who, exercising the powers of the Superior Court, rendered judgments reassessing damages, from which the present combined appeal has been taken by the defendant.

The defendant has briefed four assignments of error in the combined appeal. These claims of error addressed to the court's finding of facts and conclusions raise two principal and related issues: Did the court err in concluding that the earlier purchase of the subject properties by the plaintiff was at "a distress or forced sale" and in concluding that that transaction was not a comparable sale to be used in determining the before and after market value of the subject properties?

We turn first to the assignments of error addressed to the finding of facts which assignments claim that the court erred in refusing to include in its finding certain paragraphs of the defendant's draft finding. Our examination of the claims leads to the conclusion that the finding is not subject to material correction. In most instances, the facts sought to be added are already included in the find-

ing, explicitly or implicitly, and in the remaining instances it does not appear that the addition of the claimed paragraphs of the draft finding would affect the conclusions of this court. A finding will not be corrected for the mere purpose of substituting the language of counsel for that of the court; Practice Book § 628 (b); for adding a fact implicit in the findings as made; *Walsh* v. *Turlick,* 164 Conn. 75, 77, 316 A.2d 759; *Martin* v. *Kavanewsky,* 157 Conn. 514, 516, 255 A.2d 619; or by the addition of facts which will not affect the result. *Rushchak* v. *West Haven,* 167 Conn. 564, 566, 356 A.2d 104; *Lewis* v. *Lewis,* 162 Conn. 476, 481, 294 A.2d 637.

Although the decisive issues on this appeal are relatively narrow ones, a rather lengthy resume of the court's finding is necessary to consider the issues in proper context: On April 19, 1974, the defendant, commissioner of transportation, acquired by condemnation a 2.8-acre portion of 55.7 acres of land in Trumbull owned by the plaintiff. The commissioner assessed damages at $5600. On August 27, 1974, the commissioner acquired by condemnation a second portion consisting of 9.6 acres of unimproved land out of the parcel remaining to the plaintiff after the first taking. He assessed damages for this taking at $98,700.

The properties were situated in a light industrial zone and the highest and best use of the land was for industry as zoned. From the development viewpoint, the size of the plaintiff's original parcel significantly affected its value. In typical situations, large, attractive, "buildable" sites have become increasingly difficult to find and Trumbull is no exception. There was no other parcel of this size

under single ownership available in Fairfield County nor was there a site comparable as to size, location and zoning.

The plaintiff had purchased the original 55.7 acres of land from the Housatonic Girl Scout Council, Inc., on April 13, 1973, for the sum of $425,000. After the purchase, it completed preliminary engineering work, submitted a subdivision layout and received approval from the Trumbull planning and zoning commission for its subdivision. The engineering work and approval of the subdivision substantially enhanced the value of the land. Other factors such as terrain favorable for a site for corporate headquarters in Fairfield County, the scarcity of industrially zoned land in the area, the population growth rate of Trumbull, the readily available supply of labor, the low mill tax rate, and the inherent aesthetics of the site on the Pequonnock River all enhanced the value of the property.

The girl scout council had acquired the land in 1925 and developed it as a camp. At the end of 1970 or beginning of 1971, the board of directors of the girl scout council decided that the property was no longer suitable for a girl scout camp. They voted to dispose of the property and acquire a more suitable camp site and, accordingly, in 1971, purchased land for a new camp in Oxford. They listed the Trumbull property with a real estate firm in Hartford which had seventeen branch offices throughout the state and gave that firm a one-year exclusive contract to sell the property at an offering price of $950,000. The firm did not report any prospective purchasers to the girl scouts during the time it had the exclusive agency. On August 30, 1972, the girl scouts listed the property with another real estate firm at an offering price of $650,000. This firm

prepared and sent a brochure about the property to industrial concerns in Fairfield County and to members of the society of industrial realtors in Connecticut, New York and New Jersey. One of their clients actively expressed interest in purchasing the property and made an offer of $425,000 on March 2, 1973. The offer was accepted but the transaction was not finalized.

Between the end of 1970 through April 13, 1973, there was no active market for the purchase of industrial land in Trumbull. Disposing of a large piece of industrial land during that period of time was very difficult because of the condition of the economy and tightness of money. A buyer was needed who not only had the financial ability to purchase property but also the ability and finances to develop it.

The girl scouts having purchased another site for their camp were under pressure to meet substantial mortgage payments on both the Trumbull and Oxford properties. By April, 1973, they had run completely out of capital funds to make their April payments on the mortgage on the Oxford camp, and the bank which, as a favor, had taken a mortgage on the Trumbull property to provide funds to purchase the Oxford property made it clear that it wanted its mortgage paid off as soon as possible. Because of these financial obligations which they had to meet and because they could not wait any longer to sell the Trumbull property, the girl scouts reduced the selling price they had originally set and accepted the plaintiff's offer to purchase the property for $425,000, taking a purchase money mortgage from the plaintiff providing for sufficient interest and principal payments quar-

terly almost equal to the payments the scouts were required to make in connection with the purchase of the Oxford property.

To assist the court in its valuation of the two properties, evidence was submitted of three comparable sales of land in Trumbull, one at $38,461 per acre, one at $57,700 per acre, and the third, at $38,000 per acre. There was considerable diversity of opinion among the appraisers who testified. The defendant's expert valued the 2.8 acres involved in the first taking at $2000 per acre and the 9.6 acres on the second taking at $10,279 per acre. One appraiser for the plaintiff valued the land taken in each case at $40,000 per acre and the other appraiser set a value of $50,000 per acre in each case.

On the basis of these facts and its viewing of the subject properties, the court concluded that the land taken had a value of $25,000 per acre, resulting in damages incurred by the plaintiff in the amount of $70,000 as a result of the first taking and in the amount of $240,000 as a result of the second taking. It also expressly concluded that the plaintiff had acquired the whole parcel in 1973 for $425,000 because of financial pressure on the girl scout organization due to shortage of capital and that that sale to the plaintiff was clearly a "distress sale" and should not be considered a comparable sale. The defendant has attacked each of these conclusions as error, strongly asserting (as he did in his claims of law) that the court erred in concluding that the purchase of the subject property by the plaintiff was a distress sale and should not be considered a comparable sale in determining damages.

Despite the vigor with which the defendant has asserted his claims, we find them unconvincing. In

the first place, it is important to note that the evidence as to the purchase price was not excluded by the court but was admitted and considered together with all the attendant circumstances. It was these attendant circumstances of "financial pressure . . . due to shortage of capital" which led the court to the conclusion that the sale was a distress sale and, therefore, not to be considered as a "comparable sale" in determining the 1974 value of the properties. While the sale was clearly not a "forced sale" in the sense that it was made under compulsion or legal duress, in a colloquial sense of the term it was made in the financially "distressed" circumstances of the seller. We find no error in the conclusion of the court that under the circumstances it was not a controlling comparable sale between a willing seller and a willing buyer. We certainly cannot agree with the defendant's claims that as a matter of law the sale "should be considered as the best evidence of the value of the property before and after the taking" and "should be employed as the best comparable sale in the valuation process."

In a condemnation proceeding, the trial court is more than a trier of facts or an arbiter of differing opinions of witnesses. "He is charged by the General Statutes and the decisions of this court with the duty of making an independent determination of value and fair compensation in the light of all the circumstances, the evidence, his general knowledge and his viewing of the premises." *Birnbaum* v. *Ives*, 163 Conn. 12, 21, 301 A.2d 262; *White Oak Excavators, Inc.* v. *Burns*, 172 Conn. 478, 484, 374 A.2d 1097; *Bowen* v. *Ives*, 171 Conn. 231, 236, 368 A.2d 82. We cannot say that the court could not properly conclude after due consideration of all the evidence and the circumstances of the

purchase of the subject property that that transaction should not be considered as a comparable sale and that it did not accurately indicate the market value of the property as of the date of the taking.

The conclusions of the court are fully supported by its finding which in turn is supported by the evidence.

There is no error.

In this opinion the other judges concurred.