JOHN RUSSO, TRUSTEE, ET AL. *v.* TOWN OF EAST HARTFORD

COTTER, C. J., LOISELLE, BOGDANSKI, PETERS and HEALEY, Js.

Argued October 11—decision released November 20, 1979

*Mark C. Yellin,* with whom, on the brief, was *Martin R. Libbin,* for the appellants (plaintiffs).

*James A. Kane, Jr.,* for the appellee (defendant).

Loiselle, J. The defendant town of East Hartford condemned a tract of land owned by the plaintiffs and filed a statement of compensation. On appeal to the Superior Court, the matter was referred to a state referee, who, exercising the powers of that court, rendered judgment reassessing damages, from which the plaintiffs have appealed.

The court's finding is in substance as follows. The plaintiffs purchased 9.489 acres of land in East Hartford on October 18, 1966, for $5000. The lot contained a large man-made hole approximately 35 to 40 feet deep where the plaintiffs, who were in the excavating and land clearing business, intended to dump their excess earth material. From the time the plaintiffs acquired the property until the time it was taken by the town on March 28, 1975, the plaintiffs dumped 10,000 cubic yards of fill into the hole. Although the plaintiffs used the hole to dump fill continuously between 1966 and 1975, the substantial portion of their filling operations occurred in 1966 and 1967.

The property, which is adjacent to the Hockanum River and in close proximity to the Connecticut River, is flood prone. In December, 1966, amend-

ments to the town's zoning regulations classified the property as both a residence zone and a flood plain zone, thereby rendering the premises non-conforming, but no permit was required for the plaintiffs' filling operations.

In 1972, both state and local law imposed new restrictions on the plaintiffs' use of the land. The Connecticut legislature enacted General Statutes §§ 22a-36–22a-45, "The Inland Wetlands and Water Courses Act," which classified the plaintiffs' lot as an inland wetland and required the plaintiffs to obtain a permit to perform a regulated activity such as filling. The commissioner of environmental protection established channel encroachment lines pursuant to General Statutes §§ 25-4a–25-4c, which prohibited the plaintiffs from disturbing the volume of material by either filling or excavating on approximately one third of the lot without prior approval by the department of environmental protection. The town of East Hartford, with due notice and after public hearings, enacted two amendments to its zoning regulations. The first amendment prohibited a landowner from engaging in filling operations without a permit. The second rezoned the area in which the plaintiffs' land was located to a flood plain in which excavation or filling without prior approval of a site plan by the planning and zoning commission was prohibited.

The plaintiffs did not challenge any of these newly imposed restrictions under the procedures established to contest them. The plaintiffs did not request a permit to fill under the Inland Wetlands and Water Courses Act, nor did they appeal the classification of their property as an inland wetland to the Superior Court, a right provided by the act.

The plaintiffs did not file an application with the department of environmental protection for permission to disturb the volume of earth within the channel encroachment boundaries, and never protested the establishment of the channel encroachment lines, even when the land was condemned in March 1975. The plaintiffs did not file an application with the town planning and zoning commission for a permit to fill as required by the 1972 zoning amendments. They did not pursue their administrative remedies by objecting to the amendments or exercise their statutory right of appeal. General Statutes §§ 8-6, 8-8 and 8-9.

In 1974, town officials suggested that the plaintiffs and the town build a common fence in front of their adjoining parcels of land to prevent others from dumping garbage and debris on the properties. The fence was erected and the plaintiffs paid their portion of the installation cost.

In January, 1975, the town promulgated regulations pursuant to the Inland Wetlands and Water Courses Act which classified the plaintiffs' property as an inland wetland. The regulations required the plaintiffs to obtain a permit to fill on the land. Again, the plaintiffs did not object to the regulations at the public hearing and did not apply for a permit. In March, 1975, the plaintiffs' land was taken by the town.

The facts recited above are not as detailed as those which appear in the finding, but they are sufficient to discuss the errors briefed.

We are confronted with a situation where the overwhelming number of errors assigned by the plaintiffs are not briefed. The assignment of errors

lists 151 paragraphs of the plaintiffs' draft finding which the referee failed to include in his finding. Although the plaintiffs claim error on all 151 paragraphs, only four are briefed. In addition, the plaintiffs' brief relies on paragraphs in the draft finding, without reference to the appendix or any other source of authority, to support the claim that additions should be made to the finding.

"To secure an addition to the finding, an appellant must point to some part of the appendix, the pleadings, or an exhibit properly before us which discloses that the appellee admitted that the fact in question was true or that its truth was conceded to be undisputed." *White Oak Excavators, Inc.* v. *Burns,* 172 Conn. 478, 480, 374 A.2d 1097 (1977), quoting *Malarney* v. *Peterson,* 159 Conn. 342, 344, 269 A.2d 274 (1970). Furthermore, a fact is not admitted or undisputed merely because it has not been contradicted. *Xerox Corporation* v. *Board of Tax Review,* 175 Conn. 301, 304, 397 A.2d 1367 (1978); *Sachem's Head Assn.* v. *Lufkin,* 168 Conn. 365, 368, 362 A.2d 519 (1975).

The three paragraphs of the draft finding which are supported by the appendix are consistent with findings already made by the court and are immaterial to the issues presented on appeal. The three remaining references to the draft finding claim error in the court's failure to quote in the finding amendments to the ordinances in their entirety rather than in relevant part. No additions to the findings are made under these circumstances.

The plaintiffs also claim that twenty-seven paragraphs of the finding were found without evidence. Nowhere in their brief are these paragraphs deline-

ated so that this claim may be considered. Other assignments of error attacking the facts found concerned errors in dates and the plaintiffs' request for direct quotation of town zoning ordinances. Three of the dates were corrected by the trial court. The material portions of the town ordinances appear in the finding. The remaining claims of error with regard to dates or quotation of ordinances are either already included in the finding or not material to the issues presented on appeal and therefore need not be included in the finding. *Cutler* v. *MacDonald,* 174 Conn. 606, 610, 392 A.2d 476 (1978).

The plaintiffs' assignment of errors also attacks the trial court's conclusions. "Conclusions are not erroneous unless they violate law, logic or reason or are inconsistent with the subordinate facts. The court's conclusions are to be tested by the findings and not the evidence. . . . Conclusions logically supported by the finding must stand. [Citations omitted.]" *Connecticut Coke Co.* v. *New Haven,* 169 Conn. 663, 675, 364 A.2d 178 (1975), quoting *State* v. *Warren,* 169 Conn. 207, 213, 363 A.2d 91 (1975). The conclusions reached by the court are supported by the facts found in the finding and are logical and reasonable. The only issue to be reviewed is whether they are supported by the law.

The court found that filling or excavating on the plaintiffs' land was a permitted regulated use under the zoning regulations, and that the plaintiffs' right to fill and excavate under the Inland Wetlands and Water Courses Act was conditional upon their obtaining a permit. The plaintiffs, on the other hand, contend they had a nonconforming use to fill and excavate on the property and that this is why they did not exercise their administrative remedies or

appeal to the courts under the statutes and ordinances discussed above. The plaintiffs claim that the statutes and ordinances did not permanently prohibit filling but only postponed it until a hearing could be held to determine if a nonconforming use existed. This statement is not accurate. The statutes and ordinances do prescribe hearings, but the permits, if issued, are dependent on other factors as well as whether the use is nonconforming.

The plaintiffs contend that their failure to obtain permission to fill the hole did not destroy the nonconforming use, because it had already been established when the permit requirements were imposed and the permits could have been obtained. They argue that the court should have considered this important factor in its valuation instead of assuming that the right to fill had been permanently destroyed. It is undisputed that at the time of the taking in 1975, the plaintiffs had not obtained permits to fill as required by state statutes and town regulations. Whether there was a reasonable probability that such permits could have been obtained is a matter which must be resolved in the same manner as whether there is a reasonable probability of a zone change which would affect the value of the property taken. *Budney* v. *Ives,* 156 Conn. 83, 88–90, 239 A.2d 482 (1968). The plaintiffs bore this burden of proof. *Levine* v. *Stamford,* 174 Conn. 234, 235, 386 A.2d 216 (1978). Since the finding is devoid of any facts which would establish a probability that the permits, if requested, would have been granted, the court was not in error in concluding that the plaintiffs could not legally dump fill on the land at the time of the taking because the permits to fill had not been obtained.

The plaintiffs claim that because they had established a nonconforming use of their land, the regulations requiring permits did not apply to them and cite a number of cases that discuss the validity of nonconforming uses. The trial court's conclusion that the plaintiffs had a permitted regulated use and not a nonconforming use between 1972, when a permit was required, and 1975, when the land was taken, is correct. Both conforming and nonconforming uses become permitted regulated uses with the enactment of the statutes and ordinances. Furthermore, there is nothing in the finding to indicate that the regulations were not a valid exercise of the state's and the town's police powers. The fact that the use may have been nonconforming between 1966 and 1972, prior to the promulgation of these regulations, is not decisive because the regulations were applicable to both conforming and nonconforming uses of the land. *Teuscher* v. *Zoning Board of Appeals,* 154 Conn. 650, 657, 228 A.2d 518 (1967) ; see also *Waterford* v. *Grabner,* 155 Conn. 431, 435, 232 A.2d 481 (1967).

Next the plaintiffs claim that if the state and town regulations are applicable to them, the regulations are vague, void and unconstitutional. Other than the claim itself that the regulations are vague, there has been no showing of vagueness in the finding or in the argument.

The burden of showing that the regulations are unconstitutional rests with the plaintiffs. *State* v. *Rao,* 171 Conn. 600, 602, 370 A.2d 1310 (1976) ; *Kellems* v. *Brown,* 163 Conn. 478, 486, 313 A.2d 53 (1972), appeal dismissed, 409 U.S. 1099, 93 S. Ct. 911, 34 L. Ed. 2d 678 (1973). In *Goldblatt* v. *Hempstead,* 369 U.S. 590, 592, 82 S. Ct. 987, 8 L. Ed. 2d

130 (1961), the court said: "If this ordinance is otherwise a valid exercise of the town's police powers, the fact that it deprives the property of its most beneficial use does not render it unconstitutional." See also *Aunt Hack Ridge Estates, Inc.* v. *Planning Commission,* 160 Conn. 109, 117, 273 A.2d 880 (1970); *Teuscher* v. *Zoning Board of Appeals,* supra, 657. The plaintiffs do not rely on any fact found in the finding to indicate that the regulations, as applied to them, are unconstitutional. A reading of the regulations clearly shows that a public purpose was served by their enactment. *Windsor* v. *Whitney,* 95 Conn. 357, 367, 111 A. 354 (1920).

An oblique argument is made that the trial court's failure to consider the actions of the town in permitting the plaintiffs to fill between 1972, when most of the regulations were enacted, and 1975, the time of the taking, was inequitable. The plaintiffs' argument is based on matters in the appendix but not in the finding. The only portion of the finding referable to this argument are the paragraphs which state that, in 1974, the plaintiffs and the town erected a common fence in front of their adjacent properties to prevent others from dumping garbage there. "An estoppel rests on the misleading conduct of one party which operates to the prejudice of another." *Ackley* v. *Kenyon,* 152 Conn. 392, 397, 207 A.2d 265 (1965). There is no showing that the plaintiffs' rights were prejudiced by the actions of the defendant town. Before amending the zoning ordinances in 1972, the plaintiffs were given notice and an opportunity to be heard. Upon the enactment of the amendments in 1972, the plaintiffs could have applied for a permit to fill and appealed the town's denial, if any, to the Superior Court. Yet they failed to exercise their administrative remedies.

Moreover, there is nothing in the record to show that the plaintiffs would not have agreed to build the fence even if permits to fill had been denied and the denial had been affirmed on appeal. Furthermore, the plaintiffs concede and the trial court found that they continued to fill the hole between 1972 and 1975. For almost three years, the plaintiffs continued to benefit from this use of the land without a permit.

It is a well established rule of law that a municipality's delay in enforcing a regulation will not estop it from exercising its police powers. *Ackley* v. *Kenyon,* 152 Conn. 392, 397, 207 A.2d 265 (1965); *State* v. *Stonybrook, Inc.,* 149 Conn. 492, 501, 181 A.2d 601 (1962); 56 Am. Jur. 2d, Municipal Corporations § 421.

The plaintiffs' remaining claim of error concerns the trial court's finding that the fair market value on the date of the taking was $47,500. The plaintiffs purchased the land in 1966 for $5000. According to the plaintiffs' brief, the plaintiffs' appraisers testified that it was worth $1,200,000 at the time of trial. The court found, however, that the plaintiffs' appraisers did not consider that the plaintiffs' property was subject to state and municipal restrictions on filling when they performed their appraisal, and that the plaintiffs' appraisers testified that if the property was subject to any of those restrictions, the fair market value at the day of taking was $5000 per acre, or a total value of $47,500, the amount awarded by the court.

The finding of the trial court that the initial appraisal of the plaintiffs' experts was not adjusted for the effect of the regulations is not attacked by the plaintiffs. Furthermore, there is nothing in the finding to indicate that the appraisal of $1,200,000, which

does not appear in the finding, was binding upon the court even if there were no regulations to restrict filling operations on the land.

In a condemnation proceeding, the trial court is more than just a trier of fact or an arbitrator of differing opinions of witnesses. "He is charged by the General Statutes and the decisions of this court with the duty of making an independent determination of value and fair compensation in the light of all the circumstances, the evidence, his general knowledge and his viewing of the premises." *White Oak Excavators, Inc.* v. *Burns,* 172 Conn. 478, 484, 374 A.2d 1097 (1977), quoting *Birnbaum* v. *Ives,* 163 Conn. 12, 21, 301 A.2d 262 (1972). The trial court could properly conclude, after due consideration of the evidence, the inaction on the part of the plaintiffs and the existence of the regulations and their legal effect, that the appropriate valuation was $47,500. It cannot be said that this amount, which coincided with the valuation of the plaintiffs' own appraisers for the property subject to the restrictions, did not accurately assess the fair market value of the property at the date of the taking. *E & F Realty Co.* v. *Commissioner of Transportation,* 173 Conn. 247, 253–54, 377 A.2d 302 (1977).

There is no error.

In this opinion the other judges concurred.