[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION FOR DEFICIENCY JUDGMENT CT Page 5578
I. FACTS:
By a complaint dated July 25, 1991, this foreclosure action was brought by the plaintiff, Connecticut National Bank, against the defendants, Deep River Inn, Inc., James H. Bond and Robert L. Bond.
The following facts are not in dispute. The defendant, Deep River Inn, Inc., executed a promissory note dated March 5, 1989, in favor of the plaintiff's predecessor-in-interest, Chester Bank, in the amount of $400,000. The note was secured by a mortgage executed by the defendants, James H. Bond and Robert L. Bond, on premises known as 188 Main Street, situated in the Town of Deep River, Connecticut ("Deep River Inn property").
Upon default, the plaintiff instituted a foreclosure action. On November 30, 1992, the court, Higgins, J., entered a judgment of strict foreclosure, found the debt to be $539,523.24, which included an attorney's fee in the amount of $5,623.20. The court further found the fair market value of the premises to be $320,000.00. A law day for the defendants was set for December 31, 1992.
The defendants did not redeem on their law day and the title vested absolutely in the plaintiff on January 8, 1993. Pursuant to General Statutes Sec. 49-14(a), the plaintiff filed a motion for a deficiency judgment dated January 29, 1993. The court, Arena, J., held hearings on April 5, 1993, April 8, 1993 and April 13, 1993, to determine the value of the subject property as of January 8, 1993.
II. DISCUSSION:
A. STANDARD
The procedure set forth in General Statutes Sec.49-14 is the only method of satisfying a mortgage note when the security is inadequate to make a foreclosing plaintiff whole. Eichman v. J J Building Co., 216 Conn. 443, 449,582 A.2d 182 (1990). "`[T]he plain object [of the deficiency judgment statute] is to require a mortgage creditor, who CT Page 5579 appropriates the property in part payment only of his debt, to apply the actual value of the security to the debt before collecting any claimed deficiency' . . ." Id., 450, quoting People's Holding Co. v. Bray, 118 Conn. 568, 571,173 A. 233 (1934).
General Statutes Sec. 49-14 provides for a hearing at which the court shall consider evidence of the valuation of the mortgaged property. "`The value of the premises on the date that the title becomes vested in the mortgagee determines whether the mortgagee is entitled to a deficiency judgment."' Id., 449; quoting Di Diego v. Zarro, 19 Conn. App, 291, 294,562 A.2d 555 (1989).
In evaluating real property, the court is charged with the duty of making an independent valuation of the property involved. E F Realty Co. v. Commissioner of Transportation,173 Conn. 247, 253, 377 A.2d 302 (1977). The court is not limited to arbitrating the differing opinions of witnesses but is to make a determination in light of all of the facts and circumstances. Pandolphe's Auto Parts, Inc. v. Manchester, 181 Conn. 217, 220, 435 A.2d 24 (1980); Birnbaum v. Ives, 163 Conn. 12, 21, 301 A.2d 262 (1972).
 "`The determination of a [property's] value by a court is the expression of the court's opinion aided ordinarily by the opinions of expert witnesses, and reached by weighing those opinions in light of all circumstances in evidence bearing upon value and its own general knowledge of the elements going to establish it. Appeal of Cohen, 117 Conn. 75, 85, 166 A. 747 [1933].' Lomas Nettleton Co. v. Waterbury, 122 Conn. 228, 233, 188 A. 433 (1936)." Hartford Federal Savings Loan Assn. v. Tucker, 196 Conn. 172, 183, 491 A.2d 1084, cert denied, 474 U.S. 920, 106 S.Ct. 250, 88 L.Ed.2d 258 (1985). "[T]he determination of the credibility of expert witnesses and the weight to be accorded their testimony is within the province of the trier of facts, who is privileged to adopt whatever CT Page 5580 testimony he reasonably believes to be credible. (Emphasis added.) Id. "When confronted with conflicting evidence as to valuation to the trier may properly conclude that under all the circumstances a compromise figure most accurately reflects fair market value. New Haven Savings Bank v. West Haven Sound Development, supra, 70; Bennett v. New Haven Redevelopment Agency, 148 Conn. 513, 515-16, 172 A.2d 612 (1961); see also Whitney Center, Inc. v. Hamden, supra.
Eichman, supra, 451-452.
In a claim for a deficiency judgment, the plaintiff has the burden of proving that the property was worth less than the amount of the debt on the date of the vesting title. Eichman, supra, 451.
B. EVIDENCE
From the appraisal reports submitted by both parties, the court has ascertained a basic description of the Deep River Inn property. The property consists of a two-story wood frame dwelling with an attached two-story commercial building containing between a total of 6,570 and 6,929 square feet of space. In addition, there is a barn with approximately 440 square feet of space and a shed with 390 square feet of space, consisting of between approximately .065 and 0.66 acres of land. The property is zoned for a mixed residential and commercial use. Presently, there are three apartments on the second floor.
Caroline Lockyer, a licensed real estate appraiser testified that on January 8, 1993, the property had a value of $295,000.00 in her opinion. She testified that there are three different approaches in arriving at a property value; the cost approach, the sales comparison approach and the income approach.
Lockyer did not utilize the cost approach. In her opinion, the cost approach for several reasons was inappropriate. The substantial amount of accrued depreciation, the varying ages of the improvements, and the real estate recession. CT Page 5581 In addition, Lockyer stated that the cost approach was inappropriate because the cost of building the same structure today is substantially higher than the market value of the property.
With regards to the sales comparison approach, Lockyer considered three properties. The first property considered was located at 155 Main Street, Deep River, Connecticut. The property consisted of 0.13 acres of land with a one-story wood framed structure with approximately 2,821 square feet. The property was zoned general commercial. Lockyer testified that the building formerly housed a grocery store and was being converted to alternative uses and was sold on August 27, 1992, for $161,000.
The second property used for the comparison approach was located at 704 Boston Post Road, Westbrook, Connecticut. The property consisted of 1,133 acres of land with a one-quarter story, wood frame, mixed use building with approximately 4,028 square feet. Lockyer stated that the property formerly housed a restaurant called "The Library Lounge", and that it was completely renovated in 1987 and sold on May 22, 1992, for $350,000.
The third property considered by Lockyer was located at 11-15 North Main Street, Chester, Connecticut. The property consisted of 0.65 acres of land with two, one and two-story, wood frame, mixed use buildings approximately 4,185 square feet. The building housed professional office space on the first floor and three one-bedroom apartments on the second floor. She testified that the building formerly housed a restaurant prior to the sale and that it was sold on May 1, 1992, for $420,000.
In arriving at a sale comparison price, she testified that she considered a variety of factors concerning each of the sales and arrived at a sale comparison figure of $290,000 for the Deep River property.
Upon cross examination, Lockyer testified that the Deep River Inn, as a restaurant with a history in excess of one hundred years, could have an intrinsic value if it was continually operated. Lockyer stated while the Deep River Inn site has intrinsic value as a restaurant, its potential depends upon the ability of a new owner to regain lost customers. CT Page 5582 Lockyer testified that the Deep River Inn was very well known and that with the proper management it could be very successful again.
Additionally, Lockyer testified that she considered an income approach to arrive at a value for the Deep River Inn property. According to Lockyer's appraisal report, the property had a potential net income of $34,137.00, after operating expenses were deducted. In calculating the income approach, it is worth noting that Lockyer assigned separate potential incomes to the first floor restaurant, $8.00 per square foot, and the second floor banquet hall, $6.00 per square foot. Lockyer's report reflects that the first floor restaurant is approximately 2,800 square feet and the second floor banquet hall is approximately 2,400 square feet. Lockyer stated that after she researched the rental market, with a primary emphasis on the town of Deep River, and she decided that the property had a value of $320,000.00 as of January 8, 1993. However, because the value requested was an "as is" value, she deducted a minimum cost of $25,000.00 necessary to bring the building into a satisfactory operating condition.
In determining that a minimum of $25,000.00 would be needed, Lockyer testified that she considered several different deficiencies associated with the property. She considered the cost of filling in a dormant septic system, replacing the entire kitchen and updating the entire building to meet current building codes. In addition, the main building needed new floors, carpet replacement, a new bar, and many new fixtures. She put no value on the equipment in the building because she believed that upon her inspection that it was not operational and did not meet the proper safety codes. Lockyer did concede, however, that in addition to the approximately $200,000.00 expended on the second floor addition, a sprinkler system was installed for the building. Although Lockyer testified that as much as $75,000.00 could be spent to make such improvements, at the very minimum $25,000.00 was necessary.
Therefore, Lockyer testified that the actual "as is" value of the Deep River property based on the income approach was $295,000.00.
Lockyer's final appraisal of the Deep River property, utilizing the results from both the sales comparison CT Page 5583 approach and the income approach, was $295,000.00 as of January 8, 1993.
Charles M. Burr, III, a licensed and certified real estate appraiser in the State of Connecticut, testified on behalf of the defendants. Burr testified that he utilized both the direct sales comparison approach and the income approach in determining a final appraisal of the Deep River property. Burr stated that he did not use the cost approach because of the age of the building.
Burr testified that he considered three properties, all restaurants, for the purpose of arriving at a value for the Deep River property utilizing the sales comparison approach. Burr testified that he used restaurants as comparisons because they are a very specialized type of property. Burr testified that although the comparison of restaurants is very difficult, he considered the comparisons utilized in Deep River Inn appraisal to be "equal" in the sense that all the restaurants sold food, they all had a lounge area, and that at the time they were purchased they needed work and new management.
Burr stated that in choosing the restaurants for the sales comparison approach he considered the total square feet of usable area and the total square feet of seating. According to Burr's testimony, the Deep River property has the capacity to seat approximately 120 people in the first floor restaurant and bar area, and another 100 people in the second floor banquet room.
The first restaurant Burr considered as a comparable was located at 381 Town Street, East Haddam, Connecticut. Burr testified that it was a restaurant with an upstairs residential unit. According to Burr's testimony and appraisal report, the property consisted of 1.3 acres, with a one and one-half story building with 3,408 square feet and a shed with 660 square feet. Burr's appraisal report indicated that the restaurant had a seating capacity of 100 people. Burr stated that the property sold for $350,000.00 on May 20, 1990.
The second property considered by Burr in the sale comparison approach was a restaurant located at 44 Boston Post Road, Madison, Connecticut. According to Burr's appraisal report, the property consisted of approximately 4.3 acres, with a two story restaurant and residential structure with CT Page 5584 approximately 8,092 square feet. According to Burr's report the restaurant had a seating capacity of 150 people. Burr testified that on April 11, 1990, the property sold for $543,000.00.
The third property considered by Burr was a restaurant located at 704 Boston Post Road, Westbrook, Connecticut. According to Burr's appraisal report the property consisted of 1.1 acres, a one and two story building with a total of 5,025 square feet. Burr reported a seating capacity of 200 people. Burr testified that the property was sold for $350,000.00 on May 22, 1992.
Burr testified that based on the sale comparison approach, the Deep River property had a value of $500,000. as of January 3, 1993.
Burr testified that he also utilized the income approach in arriving at a value for the Deep River property. Burr stated that he considered the three apartments, the barn and the commercial space available to arriving an estimated income for the Deep River property. In calculating a potential income for the commercial space, it should be noted that Burr did not distinguish between the first floor restaurant and the second floor banquet hall. Instead, Burr assigned the entire area a yearly income value of $8.50 per square foot. Burr testified that he deducted expenses associated with taxes, heat, maintenance, insurance, sewer, water, legal and accounting services and arrived at a net yearly income of $43,181.00.
In determining the value of the Deep River Inn property as a restaurant, Burr testified that the first floor kitchen was equipped with the "Ansell system" which he stated was required by Connecticut law. In addition, he determined that the building was serviced by both a sprinkler system and smoke eaters. Burr also testified that value of the property was enhanced by a walk-in cooler attached to the kitchen.
Burr testified that the indicated market value of the property by the income approach was $469,500.00 as of January 8, 1993.
Burr testified that in combining the results of both the comparison sales approach and the income approach, the CT Page 5585 Deep River property had a value of $495,000.00 as of January 8, 1993.
In addition to the testimony of Lockyer and Burr, the court was presented with a 1989 appraisal report and the testimony of the assessor for Town of Deep River concerning the value of the Deep River Inn property. According to the appraisal report, prepared by McCulley Management Realty, Inc. for The Chester Bank, the Deep River Inn property had a value of $775,000.00 on September 17, 1989. The cost approach and the income approach were utilized by McCulley Management in determining a value of the property.
According to the testimony of John J. Byers, the assessor for the Town of Deep River, the Deep River Inn property had an seventy-percent assessed value of $369,530.00 on October 1, 1992. Byers testified that the cost approach was utilized in arriving at an assessed value. Byers also testified that the Deep River Inn was ideally located for use as a restaurant.
C. ANALYSIS
The court concurs with both Lockyer and Burr that the cost approach is not applicable to the Deep River property due to its age, peculiarity, accrued depreciation, varying ages of the improvements and the continuing real estate recession.
As to the comparison sales approach, the court finds that although the property has a mixed commercial and residential use, its primary and best use is as a restaurant. The court agrees with the testimony of Burr that restaurants are specialized types of property and that a sales approach utilizing restaurants as comparisons is more persuasive than an approach utilizing mixed-use properties.
However, in the opinion of the court, the sales comparison value arrived at by Burr is excessive for several reasons. First, the Deep River Inn was not a operating restaurant as January 8, 1993. The court agrees with the testimony of Lockyer that a major investment would be needed to establish a functioning restaurant. In viewing the interior pictures submitted into evidence by the defendant and by considering the testimony of both appraisers, it appears that the CT Page 5586 kitchen needs to be completely refurbished, if not replaced. It also is evident that a new bar is needed since the former bar has been completely removed from the inside of the restaurant. In addition, the court agrees with the testimony of Lockyer that floor repair is badly needed in the dining area and that there is a general need for carpet replacement throughout the building. It also appears that new fixtures will be needed and that existing electrical outlets, consisting of what appears to be exposed wires, are in need of repair.
Although the Deep River Inn is equipped with the necessary "Ansell system", smoke eaters and sprinkler system, the court finds that a substantial expenditure of funds would be required to reopen the Deep River Inn property as a restaurant.
Although a substantial investment would be necessary, the court accepts the testimony presented that the Deep River Inn has an intrinsic value as a restaurant. In determining value, the court agrees that the Deep River Inn's potential as a restaurant depends upon the ability of a new owner to regain lost customers. The Deep River Inn was very well known and as a result it is a factor which increases its value as a restaurant.
With regards to the second floor banquet room of the Deep River Inn property, the court finds that it is not a functional part of the restaurant on a day-to-day basis because of its inaccessibility and lack of adequate kitchen equipment. The banquet hall is not fully functional because of its lack of interior access, handicap access, outside step stairway and lack of a full kitchen facility.
From an income perspective, the second floor banquet hall has a somewhat limited value. The court does not accept Burr's testimony that the second floor banquet hall has an estimated 5% vacancy factor. Given the inaccessibility and the lack of a full kitchen, the court finds it difficult to conceive of circumstances under which the second floor banquet hall would be utilized profitably every day of the year except for 18 days.
However, the court finds that the second floor banquet hall does have some value. The banquet hall is the only space available of that size in the Deep River area and CT Page 5587 as such has value.
As a restaurant, the court finds that the Deep River Inn property is somewhat comparable to the property located at 381 Town Street, East Haddam, Connecticut. Similar to the Deep River property, the 381 Town Street property consisted of a restaurant with a seating capacity of approximately 100 people. It had mixed use as a restaurant and as a residential unit. Although it was on a larger piece of land, 1.3 acres compared to approximately between 0.65 and 0.66, it also had a smaller total gross floor area, 3,408 square feet compared to approximately between 6,570 and 6,929 square feet. It was reported that the property sold for $350,000.00 on May 23, 1990.
With regards to the testimony as to the property located at 44 Boston Post Road, Madison, Connecticut, the court finds that the plaintiff's critique of its use as a comparison is misplaced. The plaintiff, in its cross-examination, suggested that the sale of the property at 44 Boston Post Road was not an arms length transaction because the sale was to the Shoreline Associates for Retarded and Handicapped Persons. It was suggested, through the testimony of Lockyer, that the grantor was the parent of either a retarded or handicapped child and therefore the sale was not a accurate comparison.
To the extent that the sale price may not be accurate because of this relationship, the court finds that such a relationship may have only reduced the sale price making it lower than the actual fair market value. It is more likely than not that a parent of a handicapped child would reduce the sale price of property when such property is being sold to an organization designed to assist retarded and handicapped children. Therefore, the court does not find it necessary to exclude this comparison from its determination of the value of the Deep River Inn property. To the contrary, given its comparable seating capacity, 150 persons, and slightly larger square footage, 8,092 square feet, the court finds it has the necessary elements to make it comparable to the Deep River Inn property. The property sold for $543,000. on April 11, 1990.
The court finds that despite the necessary investments required to make the Deep River Inn a functioning restaurant, it has an intrinsic value as a restaurant. It has potential to be a successful restaurant given the proper CT Page 5588 management and renovations. The court finds that the second floor banquet hall adds value to the subject property. Finally the court finds that the Deep River Inn is comparable to the properties located at 381 Town Street, East Haddam, and 44 Boston Post Road, Madison. As a result the value of the Deep River Inn property should be reflective of the sales price of each of these properties.
III. CONCLUSION
For the foregoing reasons, the court finds that as of January 8, 1993, the Deep River Inn property had a value of $412,500.00. Pursuant to the above determination of value, it is hereby ordered that the plaintiff submit a detailed itemization of the claimed deficiency for the court's approval within two weeks for inclusion in a supplemental judgment.
It is so ordered.
ARENA, J.