[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION I
This is a condemnation matter. Pursuant to General Statutes, § 13a-73
(b), the Commissioner of Transportation ("the Commissioner" or "the appellee"), on October 22, 1999, filed his notice of condemnation and assessment of damages with reference to the taking of certain property owned by Chuck Kew Wong, et al. ("Wong" or "the appellants"). The appellants filed their appeal and application for review of statement of compensation on April 12, 2000.
A hewing on said appeal was held on August 8, 2001, at which both parties appeared and were represented by counsel. Pursuant to statute, the court conducted a judicial viewing of the subject property on August 16, 2001.
 II
The subject property is located in the Town of Branford and is designated as 960 West Main Street (Route 1). It consists of approximately 40,000 square feet and is improved with two free-standing buildings, one utilized as a restaurant and the other as a three-family dwelling. The property is located in a BL (Local Business) district.
The Commissioner has executed a partial taking of said property, taking a fee simple strip of land comprising 688 square feet along the property's West Main Street frontage and described as follows:
 "Said premises is situated in the Town of Branford, County of New Haven and State of Connecticut, on the northeasterly side of Present West Main Street, U.S. Route 1, containing 688 square feet, more or less, bounded and described as follows and shown on the map hereinafter referred to:
 SOUTHWESTERLY — by Present West Main Street, U.S. Route 1, a distance of 119.20 feet;
WESTERLY — running to a point;
 NORTHEASTERLY — by owner's remaining land, a total distance of 118 feet, more or less, by a line designated "TAKING LINE", as shown on the map hereinafter referred to; CT Page 16005
 EASTERLY: — by land now or formerly of James A. Salatto et al, 10 feet, more or less.
Said premises are more particularly delineated on a map entitled: "TOWN OF BRANFORD MAP SHOWING LAND ACQUIRED FROM CHUCK KEW WONG ET AL BY THE STATE OF CONNECTICUT DEPARTMENT OF TRANSPORTATION FOR AMTRAK RAILROAD OVER U.S. ROUTE 1 SCALE 1" = 40' November 26, 1997 JAMES F. BYRNES, JR., P.E., TRANSPORTATION CHIEF ENGINEER BUREAU OF ENGINEERING AND HIGHWAY OPERATIONS" Last Revised 8/27/99, Sheet 1 of 1, (14-57-9)
The purpose of the taking is to allow for widening the highway. While the taking line is some eight to ten feet closer to the residential building than the existing highway line, the Commissioner plans to widen the road by approximately two feet, that is to bring the edge of road two feet closer to the residential building. The balance of the taking would be improved with a sidewalk and turf area.
The Commissioner assessed damages at $4,150.00 The appellants claim aggrievement and claim damages accruing from the said taking in the amount of $92,000.00. The Commissioner has deposited the sum of $4,150.00 with the court in accordance with General Statutes, § 13a-73 and the court has subsequently paid that sum to the appellants.
 III
At trial, the Commissioner offered the testimony and appraiser's report of Michael Aletta ("Aletta")' The appellants Wong offered the testimony and appraiser's report of Philip W. Ball ("Ball").
Both appraisers used the market value approach, by which each estimated the market value of the fee simple interest of the subject property on October 22, 1999, prior to the taking and then re-estimated the said value on the same date after said taking, subtracting the latter number from the former to arrive at an estimate of damages accruing from said taking. Both appraisers concluded that the taking would have no, or deminimus impact on the restaurant use.
The critical difference between the appraisers stemmed from their determinations of "highest and best use" after the taking. Aletta determined that the highest and best use for the subject property was "for its continued present use". Aletta used the market approach to determine the vacant land market value of the subject property. In arriving at his estimate, Aletta utilized as comparables sales of three commercial properties in the vicinity of the subject property. Aletta arrived at a unit land value of $6.00 per square foot and multiplied CT Page 16006 $6.00 by the acreage of 38,300 square feet to arrive at his pre-taking fair market value of $230,000.00. Aletta found no severance damages as a result of the taking and calculated damages simply by multiplying the unit land value of $6.00 by 688 square feet, to arrive at damages of $4,150.00.
In his report, Aletta stated, inter alia: "Should any zoning variance, including a front yard setback variance be required, it is assumed to be granted."
 IV
Ball determined that the highest and best use for the subject property was to "subdivide the said property to create two 22,000 square foot lots, each with a minimum of 50 feet frontage," continuing the restaurant use on the westerly parcel, and the razing of the three-family dwelling on the easterly parcel, allowing the marketing of the easterly parcel as vacant commercial land.
Crucial to Ball's determination was the front yard setback of the residential dwelling. The Branford zoning regulations require a minimum 30 foot setback from street line for a building in a BL District (Exhibit #1, Schedule B, Section 25). Prior to the taking at issue, the setback of the dwelling was 11 feet. Ball opined, and the Court accepts, that this was a pre-existing legal non-conformity. After the taking the non-conformity was increased, the taking line leaving a setback of some 2 feet. Ball found no indication that a variance had been or was being sought for the requirement and concluded that, due to safety reasons, it was incomprehensible that the use could continue in its present location and most probably the residential building must be razed (Plaintiff's Exhibit A, p. 17). Ball further testified that the residential building had asbestos siding and asbestos material wrapped around pipes, removal of which would add to the expense of razing. (Transcript, p. 54).
Ball estimated the fair market value, based on his determination of the highest and best use. Having determined that the taking had de minimus
effect on the westerly parcel and its use, Ball assigned that parcel a value of "X" and proceeded to estimate the value of the subject property before taking as "$237,500.00 plus X." In other words, Ball valued the easterly lot developed with the residential dwelling at $237,500. In arriving at that figure Ball sought, unsuccessfully, to find sales of "multi-family homes within commercial zones that are non-conforming as to bulk requirements". Failing that, Ball utilized as comparables, sales of five multi-family residential properties in Branford. Based on this comparison, Ball calculated an estimated value of the "subject property" as $72.50 per square foot, "including land". Ball next went on to derive CT Page 16007 his estimate of the dollar value of the subject property prior to taking by multiplying the square footage of the residential dwelling by $72.50 to reach the value of $237,500 for the easterly portion of the subject property.
Ball then estimated the value of the easterly developable lot as a vacant commercial lot. In doing this, Ball utilized, as comparables, four sales of commercial property, two in Branford, also utilized by Aletto, one in New Haven and one in North Haven. Ball concluded that the easterly lot, without the residential building, would have a value of $8.00 per square foot; he assumed a lot square footage of 21,600 square feet and multiplied that square footage by $8.00 to arrive at his valuation of the easterly lot as vacant commercial land: $173,000. Ball then deducted the cost of razing the residential building from the $173,000 valuation. Ball estimated the cost of razing, including asbestos removal, at $27,500, resulting in a post-taking market value of the vacant easterly lot of $145,500.
Ball then subtracted the $145,500 from his pre-taking estimate of $237,500 to establish damages accruing from the taking at $92,000.
 V
"In condemnation cases, `[t]he property owner is required to yield voluntarily to the sovereign's demand. The only question in issue is the fair value of the property seized. The single objective . . . is to ensure that the property owner shall receive, and that the state shall only be required to pay, the just compensation which the fundamental law promises the owner for the property which the state has seen fit to take for public use.'" (citation omitted), Eichman v. J J Building Co.,216 Conn. 442, 453.
"Under our law, a state referee sitting as a court on appeals in condemnation cases is more than just a trier of fact or an arbitrator of differing opinions of witnesses. He is charged by the General Statutes and the decisions of this court with the duty of making an independent determination of value and fair compensation in the light of all the circumstances, the evidence, his general knowledge and his viewing of the premises. . . . Thus there is effective legislative sanction for the authority of the referee independently to determine a value for condemned property which is less than that . . . agreed on between the condemnee and the taking authority." Minicucci v. Commissioner of Transportation,211 Conn. 382, 388 (citation omitted). "The purpose of offering into evidence the opinions of experts as to the value of land is to aid the trier to arrive at his own conclusion, which is to be reached by weighing those opinions in the light of all the circumstances in evidence bearing CT Page 16008 upon value and his own general knowledge of the elements going to establish it. Birnbaum v. Ives, 163 Conn. 12, 20. "Evidence which we have often considered in the past is the court's view of the property and its appraisal based in part on that view. We have consistently held that the visual observations made by the trier on a visit to the property are as much evidence as the evidence presented for his consideration by the witnesses under oath. They are in fact supplemental evidence". Id., at 20.
The amount that constitutes just compensation is the market value of the condemned property when put to its highest and best use at the time of the taking (citations omitted), Greene v. Burns, 221 Conn. 736, 745. In determining market values in awarding damages for land taken it is proper to consider all those elements which an owner or a prospective purchaser could reasonably urge as affecting the fair price of the land; . . . unless, indeed, the considerations advanced are not a necessary, natural or proximate result of the taking. Budney v. Ives, 156 Conn. 83, 88. All possibilities that affect market value are relevant, Alemany v.Commissioner of Transportation, 215 Conn. 437, 445. "It cannot be doubted that both a prospective purchaser and a seller on the open market would consider the probability of a change in zoning restrictions affecting property which they considered buying and selling where such change is reasonably probable in the reasonably near future", Budney v. Ives,
supra, at 88. Wishful thinking, optimistic conjecture, speculation, rumor and unfounded prognostications do not furnish a proper basis for a finding that a litigant has proved the reasonable probability of a future change in zone, Id., at 89-90. The true issue is, not the value of the property for the use which would be permitted if a change in zone was made, but the value of the property as zoned at the time of the taking as it is affected by the probability of a change. Id., at 89.
When only a portion of a party's property is taken, the landowner is entitled not only to compensation for the value of the property taken, but also to severance damages for the diminution in the value of the landowner's remaining property that the severance of a portion of the property causes, Alemany v. Commissioner of Transportation, supra, at 444.
 VI
It is the Commissioner's position that the Town will permit the continuation of the nonconforming use after taking and if a variance were required it would be granted. The Commissioner claims that, pursuant to General Statutes, § 8-13a (a), unless the town institutes an action to enforce the setback regulation within three years of the taking the increase in nonconformity occasioned by the said taking will be CT Page 16009 protected. In this case three years from the date of taking runs to October 22, 2002.
The Commissioner points out that the Wongs have not applied for a variance of the setback regulation since the taking. The Commissioner considers the Wongs' claim that the residential building most probably must be razed as mere speculation unsupported by the evidence.
The Wongs argue that it should be the Commissioner who seeks a variance, the need for which is occasioned by the taking. The Wongs cite General Statutes, § 48-24 as reflective of "the public policy of the State that puts the burden on the condemning authority to rectify zoning consequences of the taking, and to do it before the actual taking." The Wongs do not claim the requirements of § 48-24 are applicable in the instant matter, only that the statute reflects a public policy which should be applied in the instant matter. In Russo v. East Hartford,179 Conn. 250, the court extended its "reasonable probability" analysis to permit applications: "Whether there was a reasonable probability that such permits could have been obtained is a matter which must be resolved in the same manner as whether there is a reasonable probability of a zone change which would affect the value of the property taken. Id., at 256 (citation omitted). The plaintiffs [appellants] bore this burden of proof. Id. (citation omitted).
 VII
The Court finds that the appellants have failed to establish, by a fair preponderance of the evidence, that the highest and best use for the subject property is to subdivide the lot, raze the dwelling and sell the easterly lot as vacant commercial land. The appellants' appraiser's determination is based on the assumption that the residential building could not be used because of the reduction of the front yard setback and would have to be razed. "[A]lthough the possibility of a change . . . always exists to some degree, it [is often] difficult to prove that such a possibility has become a reasonable probability.", Minicucci v.Commissioner, supra, at 386 (citation omitted). Having viewed the subject property and reviewed the testimony and evidence, the Court concludes that the appellants have failed to establish a reasonable probability that safety concerns render the said dwelling unusable and failed to establish a reasonable probability that the Town of Branford would move to prevent the continuation of the residential use. The Court notes that the taking occurred on October 22, 1999, and that the dwelling was still occupied as of the time of hearing. The Court notes further, that the Commissioner's plan is to bring the paved surface of the highway in question no more than two feet closer to the dwelling. The appellants' fear that the Commissioner might at some future time extend said pavement closer to the CT Page 16010 dwelling remains mere speculation.
Nonetheless, the increase in non-conformity occasioned by the taking is neither conjecture or speculation. The appellants have established, by a fair preponderance of the evidence, that the taking at issue has increased the non-conformity of the dwelling's front yard setback.
The appellants have established, by a fair preponderance of the evidence, that the taking has created certain uncertainties, which have a negative impact on the fair market value of the subject property, causing damages in excess of that found by the Commissioner.
 VIII
The Court accepts Aletta's determination of the highest and best use for the subject property and accepts the Aletta determination of its fair market value as vacant land prior to the taking, but finds the Aletta analysis nonetheless flawed.
With regard to the issue of variances, Aletta merely states: "Should any zoning variance, including a front yard setback variance be required, it is assumed to be granted." (Exhibit #4, Aletta Land Appraisal Report, p. 3). When asked to identify the factors which led him to this assumption, Aletta testified: "My appraisal is based upon the assumption based upon my opinion and judgment in the market place with 20 years experience in the appraisal business, appraising commercial and residential properties that should a variance be required, it would be granted." (Transcript, August 10, 2001 Hearing, p. 26, 11. 8-12). The Court finds this general statement an inadequate basis on which to base the said assumption.
The burden is on the appellants to establish that the taking has resulted in damages in excess of that paid by the Commissioner. The Court finds that the appellants have met this burden. The Court finds that the taking at issue has created an uncertainty as to whether the existing structure on the easterly portion can continue its present use and an uncertainty, as to whether a variance would be required, and if required, granted. This uncertainty must necessarily have a negative impact on the property's fair market value. See, eg., Alemany v.Commissioner of Transportation, supra, at 447-48: "While the plaintiff might be able to obtain a variance from the obligation to maintain a buffer area, a potential buyer of the plaintiff's property would be likely to discount its value because of the risk that such a proceeding would be costly or indeed might not succeed." A prudent buyer surely would take into consideration the uncertainty created by the taking and make a downward adjustment well in excess of the damages, $4,150, CT Page 16011 calculated by Aletta.
The Commissioner claims that it was within the appellants' power to remove the uncertainty cited and that the burden was on the appellants to do so. The Court disagrees. The taking has created the uncertainty cited, reducing the fair market value of the property. The appellants were not required to remove uncertainties created by the taker. The burden was on the Commissioner to remove the said uncertainty or to compensate the appellants for said reduction in the fair market value.
 IX
Having found severance damages in addition to direct damages, the Court must determine the amount of the damages occasioned by the taking. The Court finds that, prior to the taking, the fair market vacant land value of the subject property was $230,000.00. The Court finds that fair market value of the 688 square feet taken was $4,150.00.
As indicated, the Commissioner's appraiser confined his determination of the pretaking fair market value to the property as vacant commercial land with no attempt to value the property as improved by the two buildings. The appellants' appraiser set a dollar value only to the easterly portion of the subject property. This appraiser reported that the Town of Branford assesses the subject property for tax purposes at $619,200.00. The Town assessor evaluated the building component (both buildings) of the subject property at $150,570.00, (70% of assessed value).
Based on the evidence presented, including a review of the comparable sales utilized by the appraisers, and its observations in the course of the judicial viewing, the Court finds the fair market value of the subject property, land and buildings, prior to taking, to be $500,000.00.
Based on the Court's review of comparable sales and its viewing of this dilapidated structure (the dwelling); and recognizing that the uncertainty established is based on a possibility which falls well short of a reasonable probability, the Court finds that the uncertainty created by the taking, as to use of the dwelling, caused a reduction in the fair market value of the property, in the amount of $20,000.00. The total damages resulting from the said taking are found to be $24,150.00 ($20,000.00 plus $4,150.00).
The appellant's appraiser, Ball, testified he expended twenty five to thirty hours in producing his appraisal and that his fee was in the amount of $3,500.00, which the Court finds reasonable. CT Page 16012
Accordingly, judgment may enter in favor of the appellants Wong as against the appellee, the Commissioner of the Department of Transportation in the amount of $20,000.00 plus interest calculated pursuant to General Statutes, § 37-3c, plus taxable costs, and a reasonable appraisal fee of $3,500.00.
By the Court,
Downey, J.T.R.